934 P.2d 801

**PHOENIX NEWSPAPERS, INC., and Randall Collier, Plaintiffs–Appellants,**

v.

**DEPARTMENT OF CORRECTIONS, STATE OF ARIZONA, Samuel A. Lewis and Michael Arra, Defendants–Appellees.**

**No. 1 CA–CV 96–0255.**

Court of Appeals of Arizona, Division 1, Department B.

March 18, 1997.

Grant Woods, Attorney General by Charles S. Pierson, Assistant Attorney General, for Defendants–Appellees.

Morrison & Hecker by James F. Henderson, Tyler Q. Swensen, William P. French, for Plaintiffs–Appellants.

## OPINION

LANKFORD, Judge.

Phoenix Newspapers, Inc. and its reporter, Randall Collier, ("the Newspapers") appeal from the trial court's dismissal of their complaint and from an award of attorneys' fees.

In 1994, the Newspapers sought a declaratory judgment that the Arizona Department of Corrections ("ADOC") Director's Management Order 89–21 ("DMO 89–21") and the ADOC Internal Management Policy for "Release of Information to the News Media" unconstitutionally discriminate against media representatives by denying them prison visitation privileges enjoyed by the general public. In addition, the Newspapers sought an injunction against ADOC's enforcement of the DMO against the Newspapers and all members of the media.

Following dismissal of the Newspapers' 1994 complaint, they filed a new action. The 1995 complaint again sought declaratory and injunctive relief, claiming that DMO 89–21 unconstitutionally denies media representatives equal access to visitation of inmates.

The issues presented on appeal are as follows:

1. Did the trial court err in dismissing the Newspapers' 1995 complaint as barred by res judicata?
2. Did the trial court err in dismissing the Newspapers' 1995 complaint for failure to state a claim upon which relief could be granted?
3. Did the trial court err in awarding attorneys' fees to defendants pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 12–349?

We hold that the Newspapers' second complaint, filed in 1995, is not barred by the first judgment under existing Arizona law. Accordingly, we reverse the trial court's ruling that the 1995 complaint is barred by res judicata. However, we affirm the trial court's dismissal of the Newspapers' 1995 complaint for failure to state a claim upon which relief could be granted. We reverse the trial court's award of attorneys' fees to defendants.

Stated briefly, the facts and procedural history of this case are as follows. ADOC's DMO 89–21, the subject of both lawsuits, prohibits visitation of inmates except by five classes of persons. Media representatives, based on their status as news reporters alone, do not fall within any class permitted visitation. ADOC's Internal Management Policy identifies a prison liaison, designated by the Director, to coordinate responses to news media inquiries. The Newspapers claimed that these policies unconstitutionally discriminate against media representatives by denying them visitation privileges afforded members of the general public.

In the first action, the trial court ruled that DMO 89–21 confers no right of visitation upon the public. Accordingly, the court rejected the Newspapers' claim that media representatives, as members of the public, were entitled to visitation. The court dismissed the complaint for failure to state a claim upon which relief could be granted.

The Newspapers then moved to amend the 1994 complaint. They sought to include a new claim: DMO 89–21 violates the Arizona Constitution by granting privileges to certain citizens and classes of citizens while denying those privileges to the general public. The trial court denied the motion to amend. Although the court's minute entry suggested that it had found no merit in the amended complaint, the court declined to include language in its formal dismissal order that the court was "in essence finding that the proposed amended complaint would not state a claim against defendants upon which relief can be granted."

In 1995, the Newspapers filed the second complaint. The new complaint asserted essentially the same claim proposed by the motion to amend the 1994 complaint. The trial court granted the State's motion to dismiss on two grounds: (1) The complaint was barred by res judicata because of the dismissal of the 1994 complaint; and (2) the complaint failed to state a claim upon which relief could be granted. In addition, the court ordered the Newspapers to pay the State's attorneys' fees as a sanction. The Newspapers appeal both the dismissal and the fee award. We have jurisdiction pursuant to A.R.S. section 12–120.21(A).

I.

■ We first consider whether the doctrine of res judicata bars the second complaint. Res judicata is a question of law and is therefore reviewed de novo. Timothy Berg et al., 1 Arizona Appellate Handbook § 3.5.2.5.1 at 1995–3–15 (Jefferson L. Lankford & Paul G. Ulrich eds., 3d ed. 1992, 1995 supp.); see generally Horizon Resources Bethany Ltd. v. Cutco Indus., Inc., 180 Ariz. 72, 881 P.2d 1177 (App.1994) (appellate court is not bound by the trial court's conclusions of law).

The res judicata issue reveals itself to be even more complex than the parties present it. Part of the difficulty is that most Arizona cases apply an antiquated "same evidence" test for defining the "same cause of action." The other problem is that the trial court not only refused to permit the Newspapers to amend their complaint to add a new theory, but declined to clearly express its reason for doing so.

For an action to be barred, it must be based on the same cause of action asserted in the prior proceeding. Chaney Bldg. Co. v. City of Tucson, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986); Nienstedt v. Wetzel, 133 Ariz. 348, 355, 651 P.2d 876, 883 (App.1982). Arizona has applied a rather restrictive test to resolve this question: If no additional evidence is needed to prevail in the second action than that needed in the first, then the second action is barred. See Rousselle v. Jewett, 101 Ariz. 510, 421 P.2d 529 (1966); Wilson v. Bramblett, 91 Ariz. 284, 371 P.2d 1014 (1962); Pierpont v. Hydro Mfg. Co., 22 Ariz.App. 252, 526 P.2d 776 (1974). Such cases adopting the "same evidence" test were consistent with the first Restatement of Judgments § 61 (1942), which adopted the test.

The same evidence test has fallen into disuse in recent years. See Ross v. International Bhd. of Elec. Workers, 634 F.2d 453 (9th Cir.1980) (applying Arizona law and identifying "same evidence" test, but stating that dispositive question was whether litigant previously had a fair opportunity to litigate the claim); Heinig v. Hudman, 177 Ariz. 66, 865 P.2d 110 (App.1993) (applying Restatement (Second) of Judgments § 24 (1982)). Nevertheless, we stated as recently as 1982 that "Arizona case law is clear" that this test governs. Bill v. Gossett, 132 Ariz. 518, 522, 647 P.2d 649, 653 (App.1982).

The Restatement (Second) of Judgments and the clear majority of courts now employ a "transactional" test for determining whether the cause of action is the same. Section 24 of the current Restatement provides:

[T]he claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

What factual grouping constitutes a "transaction", [sic] and what groupings constitute a "series", [sic] are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motiva-

tion, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

The modern trend also clearly favors this transactional test. Restatement (Second) § 24, cmt. a; 1B JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 0.410[1] at III–193 n. 24 (2d ed. 1991) (most federal circuits have adopted transactional test); *Durhan v. Neopolitan*, 875 F.2d 91, 94 (7th Cir.1989) (most federal courts use transactional test). The same evidence test is regarded as too narrow, failing to fully serve the res judicata policy of precluding the reassertion of claims. *See Snell v. Mayor and City Council of Havre de Grace*, 837 F.2d 173, 176 (4th Cir. 1988); *Durhan*, 875 F.2d at 94. It allows litigants to recast their claims under new theories, implicating somewhat different facts than those involved in the prior action. "[O]nly slight variations of the facts to support different theories of the same incident can result in a court finding different causes of action, thus thwarting the purposes of res judicata." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630 (Tex.1992) (adopting Restatement (Second) § 24). Instead, the transactional test focuses on whether the new claim arises out of the same "transaction or occurrence" that was the subject of the original action. *Id.; see* MOORE ET AL., *supra* ¶ 0.410[1] at III–193–94 (stating that any difference between Restatement (Second) § 24 and Rule 13(a), Fed.R.Civ.P. definitions of "transaction or occurrence" is insignificant); *cf.* Ariz.R.Civ.P. 13(a) (compulsory counterclaim rule).

Applying the old Arizona rule results in no preclusion. The Newspapers assert a new theory in their second action, supported by some additional facts. Indeed, at least one fact asserted in the second action directly contradicts a fact essential to the first. In the first, the Newspapers alleged that the general public was granted visitation, while in the second, it asserted that the public was denied that privilege. Unfortunately, that approach permits the Newspapers—and any other plaintiff—to avoid preclusion merely by posturing the same claim as a new legal theory. The undesirability of such a succes-

sion of litigation, unfair to defendant and burdensome to the legal system, is obvious.

In contrast, the modern rule prevents such relitigation. If the new claim is closely related to the first—because it arises out of the same events—it could and should have been asserted in the first action. "[T]he prevailing view in the courts is in favor of requiring a plaintiff to present in one suit all of the claims for relief that he may have against the defendant arising out of the same transaction or occurrence." MOORE, ET AL., *supra* ¶ 0.410[1], at III–193. If the plaintiff had such an opportunity to litigate in the first action, its second attempt should be—and generally is—barred.

The transactional test prevents what virtually all courts agree a plaintiff should not be able to do: revive essentially the same cause of action under a new legal theory. *See Restatement, supra* at cmt. c; *Robinson v. National Cash Register Co.*, 808 F.2d 1119 (5th Cir.1987); *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589 (7th Cir.1986). For example, having failed under a contract theory, a plaintiff cannot bring the same cause as a tort claim. *Dowd v. Society of St. Columbans*, 861 F.2d 761, 763 (1st Cir.1988).

That is precisely what the Newspapers seek to do here. Having failed to prevail on one theory, they assert another in this action. However, underlying both theories is the same occurrence: the defendants' denial of media access to prisoners. If they failed to exercise an opportunity to litigate that theory in the first action, the Newspapers should not be able to burden the system and the defendant with another action concerning the same events. To allow the Newspapers to bring a second action based on the same occurrence involved in the first subverts the basic purpose of the res judicata doctrine of barring the splitting of claims.

However, existing Arizona law does not bar the claim. Under the same evidence test, for example, an action on an open or stated account is not barred by a prior action on a promissory note, even though both actions are based on the same debt. *Wilson v. Bramblett, supra.* Needless to say, we are not free to ignore or alter the law as enunciated by our supreme court. Arizona Su-

preme Court decisions also bar us from following the second Restatement because it conflicts with Arizona case law. *See Jesik v. Maricopa County Community College Dist.,* 125 Ariz. 543, 546, 611 P.2d 547, 550 (1980) ("[W]e follow the Restatement only in the absence of Arizona authority to the contrary.").

Accordingly, we are compelled to hold that the judgment in the first action does not bar the claim asserted in this action. Although the claims involved in the two proceedings arise out of the same event, the denial of access to prisoners, they do not constitute the same cause of action under existing Arizona law.

II.

Because we hold that the Newspapers' 1995 complaint was not barred by res judicata, we next consider their claim that the trial court erroneously dismissed the complaint for failure to state a claim upon which relief could be granted.

█ In reviewing a dismissal for failure to state a claim, this Court assumes that the allegations in the complaint are true and upholds the dismissal only if we are certain that the plaintiff can prove no set of facts which will entitle him to relief upon his stated claims. *E.g., Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors,* 184 Ariz. 419, 424, 909 P.2d 486, 491 (App.1995). The Newspapers contend that in violation of the Arizona Constitution, they, as members of the general public, were denied access to prisoners.[1] The Newspapers raise two bases for their claim. First, they argue that the ADOC's regulations deny

members of the press, as members of the general public, equal protection under the law. *See* Ariz. Const. art. II, § 13. Second, they argue that the regulations constitute impermissible special legislation. *See* Ariz. Const. art. IV, pt. 2, § 19(13).

█ We first address the Newspapers' equal protection argument. Because this case addresses neither a fundamental right nor a suspect class, we find denial of equal protection only where no rational basis exists for the classification. *E.g., State v. Nguyen,* 185 Ariz. 151, 154, 912 P.2d 1380, 1383 (App. 1996). In other words, the Equal Protection Clause does not deny the State the power to treat classes of people differently as long as the classification is reasonable. *State v. Beckerman,* 168 Ariz. 451, 453, 814 P.2d 1388, 1390 (App.1991).

█ The law affords no guarantee that the public obtain unrestricted access to prisoners. ADOC has discretion to promulgate its regulations in order to maintain a safe and efficient prison system. Limitations on persons permitted entry to prisons are rationally related to the State's interest in public safety and prison order.[2] No set of facts would entitle the Newspapers to relief upon this claim.

Moreover, the Newspapers have raised an unconventional, and unpersuasive, equal protection claim. They contend that the Equal Protection Clause precludes the State from granting rights to any group without accordingly granting such rights to the general public. However, the Equal Protection Clause prohibits unreasonable discrimination against, rather than in favor of, an identifiable class. *Arizona Downs v. Arizona*

---

**1.** The State argues that *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), renders plaintiffs' complaint futile, and therefore the court correctly dismissed it. *Pell* does not address the issues presented in this case. The media plaintiffs in *Pell* based their claim on the First Amendment freedom of the press. They did not, as the State incorrectly contends, base their cause of action on the Equal Protection Clause. Here, the media plaintiffs brought their cause of action as members of the public and claimed that the prison regulation denied them rights afforded other citizens. Thus, they have raised an equal protection claim, as well as a special legislation claim.

Moreover, *Pell* held that the right of the press to prisoner access extends no further than that of the general public. The Newspapers' argument would broaden *Pell*'s holding by granting the general public rights of prisoner access extended to any persons. We decline to so hold.

**2.** In considering whether this rule rationally advances a legitimate goal, we may consider either the actual basis on which the ADOC acted or any hypothetical basis on which it may have acted. *See Church v. Rawson Drug & Sundry Co.,* 173 Ariz. 342, 350, 842 P.2d 1355, 1363 (App.1992).

*Horsemen's Foundation,* 130 Ariz. 550, 557, 637 P.2d 1053, 1060 (1981). The Newspapers' claim that legislation granting visitation privileges to specified persons unreasonably discriminates against all others misconstrues the purpose of the clause. The State is not obligated to afford all persons or groups every privilege granted to any other person or group. *Cf. Kahn v. Thompson,* 185 Ariz. 408, 916 P.2d 1124 (App.1995) (holding senior citizen discounts to municipal tennis courts not violative of equal protection).

■ Nor does the Newspaper have a colorable claim based upon the Special Legislation Clause, which prohibits unreasonable discrimination *in favor of* a particular class. *See id.* Legislation is general, and thus not special, if the classification has a reasonable basis, encompasses all members of the relevant class, and allows members to move in to and out of the class. *Republic Inv. Fund I v. Town of Surprise,* 166 Ariz. 143, 149, 800 P.2d 1251, 1257 (1990). In this case, the regulations are rationally related to maintaining prison security and order. In addition, all members of the enumerated classes are permitted visitation, and the classes are elastic, allowing movement of members.

Because the ADOC's regulations violate neither the Equal Protection Clause nor the Special Legislation Clause, we affirm the trial court's dismissal because the Newspapers' 1995 complaint failed to state a claim upon which relief could be granted.

### III.

■ We now consider whether the trial court properly awarded defendants their attorneys' fees under A.R.S. section 12–349, which mandates fee awards for filing frivolous lawsuits. When reviewing a discretionary award of attorneys' fees, this Court will reverse only for an abuse of discretion. *Heuisler v. Phoenix Newspapers, Inc.,* 168 Ariz. 278, 284, 812 P.2d 1096, 1102 (App. 1991). In contrast, under A.R.S. section 12–349, the fee award is mandatory. The judge must award fees, and the question is whether

sufficient evidence exists to support his finding of a frivolous claim or defense.

■ The statute requires that the action be groundless, harassing and in bad faith for fees to be awarded. A.R.S. § 12–349. We view the evidence in a manner most favorable to sustaining the award and affirm unless the trial court's finding that the action can be so characterized is clearly erroneous. *Heuisler,* 168 Ariz. at 284, 812 P.2d at 1102 (citing *Gilbert v. Board of Medical Examiners,* 155 Ariz. 169, 181, 184, 745 P.2d 617, 629, 632 (App.1987)).

■ We first address the Newspapers' claim that the trial court did not enter appropriate findings of fact or conclusions of law. Findings of fact and conclusions of law need only be specific enough to allow an appellate court "to test the validity of the judgment." *Miller v. Bd. of Supervisors of Pinal County,* 175 Ariz. 296, 299, 855 P.2d 1357, 1360 (1993) (citation omitted). Moreover, A.R.S. section 12–350 requires only that, in awarding attorneys' fees pursuant to A.R.S. section 12–349, the court "set forth the specific reasons for the award." This provision mandates no particular form for these findings. *See Lane v. Hognason,* 12 Ariz.App. 330, 470 P.2d 478 (1970) (approving trial court's findings of fact and conclusions of law in minute entry form).

In this case, Judge Galati's November 6, 1995, minute entry specifically incorporated Judge Cates' findings and conclusions in his minute entry denying the Newspapers' motion to amend the complaint. Judge Galati also made specific findings of groundlessness, lack of good faith and intent to harass in his December 20, 1995, minute entry. These findings sufficiently indicate the basis for his conclusions and meet the requirements set forth in A.R.S. section 12–350 and expanded upon in *State v. Richey,* 160 Ariz. 564, 774 P.2d 1354 (1989) (requiring findings of fact and conclusions of law under both A.R.S. sections 12–341.01(C) and –349).

■ The Newspapers also contend that the trial court should have required clear and convincing evidence to support its award of attorneys' fees.[3] The appropriate standard

---

3. The court awarded fees pursuant to A.R.S. section 12–349. Defendants respond that the News-

papers failed to raise the issue of the proper standard of proof under this statute, and there-

under A.R.S. section 12–349 is preponderance of the evidence.

Arizona Revised Statutes section 12–349 does not expressly require that a claim be established by clear and convincing evidence. In that respect, it is notably different from another fee sanction statute, A.R.S. section 12–341.01(C), which does expressly require such evidence. Timothy Berg, *et al.*, Arizona Attorneys' Fees Manual § 5.4.2.4 at 5–10 (Bruce Meyerson & Patricia K. Norris, eds., 2d ed. 1992). Both statutes share common language identifying claims which "constitute[ ] harassment, [are] groundless and [are] not made in good faith." But section 12–349, enacted a number of years after section 12–341.01(C), conspicuously omits reference to a clear and convincing standard of proof.

■■■■ Our review of the legislative history produced no specific reference to the legislature's intent in omitting a clear and convincing evidence standard. Because the statute itself is silent on the standard of proof, we look for the legislature's intent in such sources as context, subject matter, historical background and purpose. *Blum v. State*, 171 Ariz. 201, 205, 829 P.2d 1247, 1251 (App.1992). Moreover, we presume that the legislature does not enact superfluous or reiterative legislation. *Patterson v. Maricopa County Sheriff's Office*, 177 Ariz. 153, 156, 865 P.2d 814, 817 (App.1993).

Section 12–349 was enacted with the express purpose of reducing groundless lawsuits. When the legislature enacted A.R.S. section 12–349, section 12–341.01(C)—another statute enacted to reduce frivolous litigation—was already in existence. Because the scope of section 12–349 differs little from the scope of section 12–341.01(C), we are convinced that the legislature intended to further reduce frivolous litigation by increasing the threat of fee sanctions. *Cf. State v. Richey*, 160 Ariz. 564, 565, 774 P.2d 1354, 1355 (1989) (recognizing that A.R.S. section

12–341.01(C) "specifically requires a higher burden—'clear and convincing evidence'—before a trial court can determine that a claim ... constitutes harassment, is groundless and not made in good faith"). Therefore, we hold that A.R.S. section 12–349 requires that defendants show, by a preponderance of the evidence, that the Newspapers' lawsuit was groundless, in bad faith and harassing.

■■■■ Finally, in light of the preponderant evidence standard, we consider whether defendants presented sufficient evidence for an award of attorneys' fees. This Court reviews the trial court's findings of fact under a clearly erroneous standard. Ariz. R.Civ.P. 52(a); *Schnepp v. State ex rel. Dep't of Economic Sec.*, 183 Ariz. 24, 27, 899 P.2d 185, 188 (App.1995). However, the application of the fee statute is a question of law subject to de novo review. *See Roberts v. State*, 179 Ariz. 613, 880 P.2d 1159 (App. 1994). We hold that the trial court erred in awarding attorneys' fees pursuant to A.R.S. section 12–349.

Both A.R.S. sections 12–341.01 and –349 require evidence that the Newspapers' claim constituted harassment, was groundless and not made in good faith. Because both statutes use the conjunctive "and," all three elements must be present. *Gilbert*, 155 Ariz. at 180, 745 P.2d at 628. An objective standard may be utilized to determine groundlessness, but a subjective standard determines "intent to harass" and bad faith. *Id.* at 180–81, 745 P.2d at 628–29.

Judge Galati's December 20, 1995, minute entry discussed the evidence of each element required by *Gilbert*. First, Judge Galati expressly found objective evidence of groundlessness. The Newspapers had lost their claim in the first action on the merits by denial of their motion to amend. The Newspapers had an opportunity to appeal from this ruling, but did not. Instead, the News-

---

fore waived review of this claim. *See Richter v. Dairy Queen of S. Arizona*, 131 Ariz. 595, 596, 643 P.2d 508, 509 (App.1982). We disagree. The Newspapers sufficiently put the trial court on notice of the argument in their Response to Motion for Attorneys' Fees. The Newspapers' response addressed both fee statutes—A.R.S. sections 12–341.01 and –349—and the applicable

standard of proof set forth in A.R.S. section 12–341.01. The Newspapers concluded its discussion of both statutes with the claim that "[a]ll three of the elements of harassment, groundlessness and bad faith must be ... shown by clear and convincing evidence...." The issue was thereby adequately preserved for appellate review.

papers filed a second action that is barred by res judicata. Because a reasonable attorney would not have brought an action barred by res judicata, the trial court found objective evidence that the claim was groundless.

However, we have determined that existing Arizona law does not bar the claim. Accordingly, the claim is not groundless for this reason.

Moreover, Judge Galati did not find sufficient evidence of the Newspapers' intent to harass. Defendants correctly argue that intent to harass may be established by circumstantial evidence. Nonetheless, Judge Galati expressly stated that he "[did] *not* find that it was Phoenix Newspapers' intent to file a meritless lawsuit for the purpose of harassing the state...." (Emphasis in original). Although he continued that the action had a harassing "effect," A.R.S. section 349—as well as section 341.01—requires harassing intent. *See Gilbert*, 155 Ariz. at 180–81, 745 P.2d at 628–29 (referring repeatedly to the "intent to harass" as a criterion of section 12–341.01(C)).

Thus, while the evidence might have supported a finding of intent to harass, Judge Galati expressly found to the contrary. Because all three elements—groundlessness, bad faith and intent to harass—must be present, Judge Galati misapplied the statute by awarding attorneys' fees to defendant without the requisite finding of intent to harass and without a correct basis for finding the claim groundless. Accordingly, we reverse the award of attorneys' fees pursuant to A.R.S. section 12–349.

For these reasons, we reverse in part and affirm in part.

PATTERSON, P.J., and GERBER, J., concur.