333 P.3d 779

**Margaret Hurley CLARK, Plaintiff/Appellee,**

**v.**

**ANJACKCO INC., an Arizona corporation, Defendant/Appellant.**

**No. 1 CA–CV 13–0322.**

Court of Appeals of Arizona, Division 1.

Aug. 19, 2014.

Tiffany & Bosco, P.A., Phoenix By Alisa J. Gray, Robert A. Royal, May Lu, Counsel for Plaintiff/Appellee.

Schneider & Onofry, P.C., Phoenix By Charles D. Onofry, Luane Rosen, Dee R. Giles, Counsel for Defendant/Appellant.

Presiding Judge RANDALL M. HOWE delivered the opinion of the Court, in which Judge MICHAEL J. BROWN and Judge JON W. THOMPSON joined.

## OPINION

HOWE, Presiding Judge.

¶ 1 Anjackco, Inc., appeals from the superior court's award of attorneys' fees to Margaret Hurley Clark on Clark's complaint seeking inspection of certain corporate records. Anjackco contends that Clark was not entitled to an award of fees under A.R.S. § 10–1604, which requires a corporation to pay a shareholder plaintiff's fees if the court grants the plaintiff's request for an order to permit inspection and copying of records. Anjackco contends that the statute does not apply because the superior court's order addressing the inspection of records was entered upon agreement of the parties. Anjackco further argues that, even if Clark was entitled to an award of fees, the amount awarded was excessive. We affirm the superior court's ruling because the inspection of the corporate records occurred pursuant to the court's order and the court did not abuse its discretion in determining the fee amount.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Anjackco is a corporation doing business in Arizona, and is a member and sole

manager of PTH Properties, LLC. Patrick T. Hurley is Anjackco's president, a member of PTH Properties, and Clark's brother. Clark owns 26% of the shares of Anjackco, and Hurley owns 74%.

¶ 3 On January 13, 2012, Clark, through counsel, sent a letter to Woodrow, Hurley's attorney, requesting to inspect and copy the records of Anjackco and PTH Properties. With respect to Anjackco, the letter requested that Woodrow provide "a copy of the Articles of Incorporation and all corporate minutes since 2005," designate a reasonable time and place for Clark "to inspect and copy *all* books and records [and financial statements of Anjackco, Inc.] by no later than January 27, 2012," and provide copies of a December 2, 2011, judgment and any documents evidencing the amounts received by Hurley entities in connection with certain litigation. Clark's stated purpose for the inspection was "(1) to ascertain the value of the shares owned by [Clark]; (2) to examine all expenditures in order to determine their reasonableness and wisdom; (3) to ascertain the current assets and liabilities; (4) to determine whether excessive compensation is being paid to officers, directors, and others closely associated with management; and (5) to review the recent financial performance of Anjackco, Inc."

¶ 4 On January 31, 2012, Woodrow emailed Clark the PTH Properties operating agreement. On February 3, 2012, Woodrow sent copies of several documents related to PTH Properties. By letter dated February 15, 2012, to Woodrow, Clark again asked for access to the items in the January 13 letter, indicating she would take the matter to arbitration if the documents or access were not received by February 24, 2012.

¶ 5 By letter to Anjackco, dated February 16, 2012, in care of Woodrow as statutory agent and Hurley as president, Clark made a formal demand to "inspect and copy all books and records and financial statements" of Anjackco as permitted by the bylaws of the company and Arizona law. The letter quoted portions of the bylaws and statutes, emphasizing certain documents the company was required to maintain.

¶ 6 On March 16, 2012, Clark and her attorney appeared at Woodrow's office to inspect the records of Anjackco and PTH Properties. Documents provided included the corporate minute book of Anjackco and 2010, 2009, and 2008 federal and state income tax returns of Anjackco and PTH Properties. Clark's counsel told Woodrow that some records were missing, to which Woodrow responded that he had produced all the records in his possession and had not contacted Hurley because he was unsure whether he represented Anjackco or Hurley.

¶ 7 On May 3, 2012, Clark filed a complaint against Anjackco and Hurley pursuant to A.R.S. § 10-1604 for a court-ordered inspection of documents and for an accounting. The complaint alleged that although Anjackco had produced or made available some records, it had not provided all of the requested records. The superior court issued an order to show cause and scheduled a return hearing. On May 11, Woodrow and Clark conferred, and Woodrow understood that if he sent bank records to support the tax return numbers, they could execute a stipulation to vacate the hearing. Draft stipulations were prepared, but Woodrow did not agree with Clark's demand for payment of $17,722.18 in attorneys' fees and costs. The order to show cause hearing was consequently rescheduled to May 25, 2012. On May 23, 2012, Clark received some of the documents that she had requested.

¶ 8 At the hearing on May 25, Anjackco contended that the other documents Clark sought had either been provided or did not exist. Clark disagreed, asserting that she had not received financial records for 2012 and that the records from 2008 to 2012 were incomplete. Because Clark's counsel had not had time to raise the issue of the missing documents with Anjackco's counsel, the court recessed to allow counsel to confer. On returning to the hearing, Anjackco stated that, although it disputed whether Clark was entitled to receive certain documents, it nevertheless would produce them. The parties agreed on the record that, within ten business days, Anjackco would produce 2012 bank statements and general ledgers up to the time of filing the complaint, and would

look for documents Clark claimed were missing and produce them if they existed. The court stated, "on the parties' agreement, then, the Court will order that the defendants will look for whatever 2008 to 2011 records have been identified by the plaintiff verbally . . . and will produce those . . . within ten business days." Anjackco's counsel stated that the lawsuit should have never been filed, asserting lack of communication as the problem and noting that Clark had never contacted Woodrow after the inspection regarding any missing documents. Anjackco's counsel told the court he did not envision any dispute regarding providing any documents. The court entered the following minute entry order:

On the parties' agreement,

IT IS ORDERED Defendants will produce, within 10 business days, the 2012 bank statements, and to the extent same exists, Defendants will also produce within that same time period, the missing documents from 2008 through 2011 verbally articulated by Plaintiff's counsel to Defendants' counsel this morning during the recess.

¶ 9 Anjackco and Hurley answered the complaint on June 8, 2012. At a status conference on June 13, 2012, Clark's counsel stated that she had sent Anjackco a list of the documents still missing and that she had received some documents but was still missing some documents as listed in a memorandum she had prepared. She indicated she had trouble contacting Anjackco's counsel to discuss the missing documents. Anjackco's counsel advised that if missing documents were identified that day, he would immediately attempt to find and produce them. The court directed the parties to have a face-to-face meeting to attempt to resolve remaining issues without further intervention by the court. The court's minute entry stated:

Plaintiff's counsel advises the Court they have received some documents but believe there are additional documents yet to be provided. Plaintiff's counsel prepared a memo outlining the additional documents believed to be missing, which will be put in letter form and provided to Defendants' counsel today. Defendants' counsel will review the list, contact his clients and gather any available additional documents.

The last of the requested documents were provided on June 22, 2012.

¶ 10 Clark then filed an application for $21,464 in attorneys' fees and $446 in costs pursuant to A.R.S. § 10–1604. Clark asserted that at the May 25, 2012, order to show cause hearing, the court had ordered Anjackco to produce missing documents and at the June 13 conference had ordered Anjackco's counsel to "review the list, contact his clients and gather any available additional documents." Clark argued that an award of fees under § 10–1604 was mandatory, that she complied with the statute, and that therefore she was entitled to a fee award.

¶ 11 Anjackco objected, asserting the complaint should never have been filed. Anjackco argued that Clark filed the action on the grounds she had been denied access to corporate records, but she had failed to identify with reasonable particularity the records she sought and then failed to follow up with Anjackco after her inspection of the records was unsatisfactory. Anjackco argued that because Clark's request did not describe the documents with reasonable particularity, it did not comply with § 10–1602 and she was therefore not entitled to attorneys' fees. Anjackco also argued that the complaint was entirely unnecessary. It noted that it had agreed to provide the documents sought even before filing its answer and that it voluntarily provided all documents requested. Anjackco asserted that Clark was not entitled to fees under the statute because fees are awarded "if the court orders inspection and copying of the records demanded," § 10–1604(C), and the court had not entered such an order. Anjackco further claimed that Clark was seeking fees beyond those allowed by statute, which provided only for fees incurred "to obtain the order." § 10–1604(C). It argued that the time expended on the case by Clark's counsel was wasteful and the fees therefore excessive.

¶ 12 The court granted Clark's request, awarding $21,070 in attorneys' fees and $446 in costs. The court found that Clark's pre-lawsuit request complied with the statutory requirements to be eligible for a fee award,

Clark had obtained an order to permit inspection and copying of demanded records, and Anjackco had no reasonable basis for doubting her entitlement to the records. *See* A.R.S. §§ 10-1602(C), -1604(C). A revised judgment was entered to clarify that the judgment was against Anjackco only. Anjackco timely appealed from the fee award.

## DISCUSSION

¶ 13 Anjackco argues that Clark is not entitled to costs or fees because the corporation produced the documents voluntarily and the only orders entered were expressly based on the parties' agreement. Anjackco contends that the cost and fee statute, § 10-1604(C), applies only "[i]f the court orders inspection and copying of the records demanded."

¶ 14 The interpretation and application of a statute present questions of law, which we review de novo. *Schwarz v. City of Glendale,* 190 Ariz. 508, 510, 950 P.2d 167, 169 (App.1997). The goal in interpreting a statute is to give effect to legislative intent. *Mail Boxes, Etc. U.S.A. v. Indus. Comm'n,* 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). To that end, we look first to the plain language of the statute. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.,* 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). Where statutory language is unambiguous, we give effect to that language. *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). Where a statute provides for a mandatory award of attorneys' fees, we consider whether sufficient evidence exists to support the court's decision, viewing the evidence in the light most favorable to upholding the court's ruling. *Phoenix Newspapers, Inc. v. Dep't of Corrections,* 188 Ariz. 237, 243, 934 P.2d 801, 807 (App.1997). We accept the court's findings of fact unless clearly erroneous. *Id.* at 244, 934 P.2d at 808.

¶ 15 A shareholder is entitled to inspect and copy certain records of a corporation upon notice. A.R.S. §§ 10-1601(E), -1602(A). A shareholder may inspect and copy certain other records, identified in § 10-1602(B), upon notice, if that shareholder complies with certain requirements under § 10-1602(C). Specifically, the shareholder must make the demand for those records in good faith and for a proper purpose, the shareholder must describe "with reasonable particularity" its purpose and the records it desires to inspect, and the records must be directly connected with the shareholder's purpose. § 10-1602(C). If a shareholder has complied with these requirements, and a corporation "does not allow" that shareholder to inspect and copy the records identified in § 10-1602(B) "within a reasonable time," the shareholder may ask the court for "an order to permit inspection and copying of the records demanded." § 10-1604(B). "If the court orders inspection and copying of the records demanded," the court must order the corporation to pay the shareholder costs, including reasonable attorneys' fees, "incurred to obtain the order, unless the corporation proves that it refused inspection in good faith because it had a reasonable basis for doubt about the right of the shareholder to inspect the records demanded." § 10-1604(C).

¶ 16 Anjackco argues that it voluntarily produced its records to Clark and that Clark could have obtained the records without filing suit. But Anjackco had the opportunity to produce the records before the lawsuit was filed and did not do so. In her January 13 and February 15 letters, Clark sought to inspect all books and records and financial statements. Although Anjackco suggests that these letters did not state with particularity the documents Clark was requesting, as A.R.S. § 10-1602(C)(2) requires,[1] the February 16 demand for inspection made clear that Clark was seeking all records to which she was entitled by statute or the corporation's bylaws. Anjackco produced some, but not all the records Clark sought. Whether Anjackco would have produced the records in the absence of the lawsuit is unknowable, but Anjackco's assertion that it would have is belied by its earlier failure to do so.

1. Anjackco has not challenged the superior court's finding that Clark's pre-suit requests complied with the statutory prerequisites.

¶ 17 The court's own order contradicts Anjackco's argument that the court did not order inspection and copying of the records. The minute entry from the May 25 hearing, although "on the parties' agreement," nevertheless ordered Anjackco to "produce, within 10 business days, the 2012 bank statements, and to the extent same exists, . . . [to] produce . . . the missing documents from 2008 through 2011." Having complied with the threshold requirements of A.R.S. § 10-1602, Clark was entitled to an award of costs and fees if she showed that Anjackco did not allow inspection and if she obtained an order directing Anjackco to produce the documents. The court entered such an order.

¶ 18 In support of its argument that the inspection occurred pursuant to an agreement rather than a court order, Anjackco relies on *Carswell v. Hendersonville Country Club, Inc.*, 169 N.C.App. 227, 609 S.E.2d 460 (2005). In that case, the appellate court held that a court-approved consent decree was not a court order for purposes of an award of attorneys' fees under North Carolina's cognate to A.R.S. § 10-1604. *Carswell*, 609 S.E.2d at 462. That case is factually distinguishable from the present case, however. A shareholder had been provided some requested documents but not others and filed an application for inspection of records. *Id.* at 461. The defendant filed a motion to dismiss, after which the parties entered into settlement negotiations. *Id.* at 462. The parties signed a consent order and voluntary dismissal of the action, and the court approved the order. *Id.* The court denied the plaintiff's request for attorneys' fees and the plaintiff appealed. *Id.* The appellate court found that the approval of a consent decree signed by the parties did not qualify as an order entered by the court requiring the corporation to produce records, noting that a consent decree was essentially a court-approved contract between the parties and not an adjudication of the dispute. *Id.* Because the court did not enter an order directing production of records, the statute did not allow an award of fees.

¶ 19 The court's order in this case, although based on the agreement of the parties, was not an independent agreement of the parties in the nature of a contract, as in *Carswell*, but a directive requiring Anjackco to deliver the records specified. Also, unlike *Carswell*, the parties here did not stipulate to a dismissal of the lawsuit. *Carswell* therefore does not support Anjackco's position.

¶ 20 Anjackco also argues that Clark was not entitled to attorneys' fees because it had never refused to produce its records. But refusal is not a prerequisite to an award of fees. A shareholder may bring an action when a corporation "does not allow" inspection "within a reasonable time." A.R.S. § 10-1604(A), (B). Although an outright refusal would certainly qualify as not allowing inspection under the statute, a corporation may still "not allow" an inspection without refusing one. For example, ignoring an inspection request or unreasonably delaying making the records available would constitute "not allowing" an inspection, even if those actions may not constitute a refusal.

¶ 21 Anjackco asserts it never denied Clark access to the records, was cooperative throughout the process, and voluntarily produced the requested documents. It argues that this case is similar to *Wilcher v. International Environmental Technologies, Inc.*, 168 S.W.3d 58 (Ct.App.Ky.2005). In *Wilcher*, the Kentucky Court of Appeals affirmed the superior court's denial of an award of fees under a statute analogous to A.R.S. § 10-1604(C). In that case, on May 23, the shareholder requested to examine certain records, the corporation and shareholder agreed to two production dates of May 28 and approximately a week later, and on June 6 the shareholder filed an action for an inspection. *Wilcher*, 168 S.W.3d at 59. The superior court found that the corporations involved had made a good faith effort to allow reasonable inspection of records within the time requested and that nothing showed an attempt not to disclose the records. *Id.* at 60. The court denied the request for a fee award, despite having issued an order directing production of certain documents the corporations had withheld because of privacy concerns. *Id.* at 59-60. The court of appeals affirmed, noting that the corporation had never refused the shareholder's right to inspect and copy records, but had acted in

good faith to produce the records in a reasonable time; the court concluded that the shareholder had prematurely filed the action. *Id.* at 61.

¶ 22 This case is different than *Wilcher.* First, the superior court made no finding that Anjackco acted in good faith. In addition, the corporations in *Wilcher* set two inspection dates for within two weeks of the request and the shareholder filed suit about the same time. The record here, in contrast, shows that on January 13, 2012, Clark requested certain specific documents as well as a date to inspect and copy all books, records, and financial statements of Anjackco. On February 15, she sent a second letter asking for access to the items in the January 13 letter. She sent a formal demand on February 16 again asking to inspect and copy all books, records, and financial statements, citing the applicable statutes and by-laws. On March 16, Clark appeared for the scheduled inspection at which Anjackco produced some, but not all the records requested. Clark then filed suit on May 3. Except for a few documents pertaining to another matter, Anjackco produced no additional documents in the approximately seven weeks between the inspection date and the filing of the complaint. Unlike *Wilcher,* in which one request prompted inspection within two weeks, Clark made several requests for the books and records and Anjackco did not produce them in four months. Anjackco, in effect, did not allow Clark access to those records.

¶ 23 Clark presented sufficient evidence demonstrating that she was entitled under A.R.S. § 10–1604(C) to receive payment for the costs and reasonable attorneys' fees incurred to obtain the inspection order. The superior court thus did not err in awarding Clark attorneys' fees.

■ ¶ 24 Anjackco also challenges the amount of fees awarded. It argues that the language of the statute limits an award of costs and fees to those "incurred to obtain the order," and that the time recorded was excessive. Anjackco asserts that Clark's application for fees included fees that she incurred as far back as December 2011, four months before filing suit, as well as fees for activities such as preparing written demands, making calls related to the inspection request, and inspecting the records. Anjackco asserts that such fees were not incurred in obtaining the order under A.R.S. § 10–1604. We disagree.

¶ 25 A shareholder is entitled to an award of attorneys' fees only if, before bringing an action that results in the order, the shareholder makes a written demand to inspect documents that meets certain requirements and then allows a reasonable time for the corporation to comply with the request. A.R.S. §§ 10–1601(C), –1604(B), (C). When a corporation does not comply with the request, those fees are necessarily incurred to obtain the order because the shareholder could not obtain the order without having taken those steps.

¶ 26 Clark sent her first letter requesting to inspect books and records on January 13, 2012. The six entries before that date in Clark's application for attorneys' fees appear to be related to research and preparation of that letter and would therefore properly be considered fees incurred in obtaining the order. Further, fees related to reviewing and analyzing the records may also be costs incurred in obtaining the order. Reviewing the records produced would be necessary to determine which records were not provided, which may be necessary to determine if an order is required.

■ ¶ 27 Anjackco also challenges the amount of fees awarded on the grounds that the time recorded is excessive and wasteful owing in part to four different lawyers working on Clark's behalf. We review the court's decision on the amount of reasonable fees for an abuse of discretion. *Harris v. Reserve Life Ins. Co.,* 158 Ariz. 380, 384, 762 P.2d 1334, 1338 (App.1988). The time entries attached to Clark's application for attorneys' fees show that considerable time was spent in communication among the four lawyers representing Clark. We cannot, however, say based on the entries that including these charges in the fee award constitutes an abuse of discretion.

¶ 28 Clark seeks an award of fees on appeal pursuant to A.R.S. § 10–1604 and an award of costs pursuant to A.R.S. § 12–342.

We award Clark her reasonable attorneys' fees in an amount to be determined. We award costs on appeal to Clark pursuant to A.R.S. § 12–342 upon her compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶ 29 The superior court's judgment is affirmed.