NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL AND
MAY BE CITED ONLY AS
AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DALE F. SCHAUB and ANNETTE SCHAUB; GREGORY G. MCGILL,
*Appellants*,

*v.*

NFRA INC., *Appellee*.

No. 1 CA-CV 14-0026

FILED 3-24-2015

Appeal from the Superior Court in Maricopa County
No.  CV2010-098263
The Honorable David O. Cunanan, Judge
The Honorable James R. Morrow, Commissioner

**AFFIRMED**

COUNSEL

McGill Law Firm, Scottsdale
By Gregory G. McGill
*Counsel for Appellants*

Tiffany & Bosco, P.A., Phoenix
By Dow Glenn Ostlund
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Maurice Portley joined.

---

**T H O M P S O N**, Judge:

¶1        Appellants Dale F. Schaub and Annette Schaub (Schaub) and their attorney Gregory G. McGill (McGill) appeal from the trial court's orders sanctioning them for filing a motion for a creditor bond and denying their motion for new trial with regard to the sanction.  For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        NFra, Inc. (NFra), an engineering and infrastructure consulting services firm, was formed in 2004.  Dale Schaub was elected president and CEO of NFra in 2004.  He had a 33.33% stock interest in NFra, as did two other shareholders, Sai Gundala (Gundala) and Randal Weyrauch (Weyrauch).  In 2005 Schaub was diagnosed with cancer and subsequently sustained a brain injury.  He continued to work at NFra.  In 2009 and 2010, Gundala and Weyrauch offered Schaub $100,000 to buy him out.  Schaub rejected the buy-out offers.  NFra terminated his employment in 2010.

¶3        In October 2010, Schaub filed a complaint in superior court against Gundala and Weyrauch for breach of contract, intentional interference with contract, conversion, breach of fiduciary duty, and negligent misrepresentation.  Among other allegations, Schaub complained that his stock had been improperly diluted.  He sought monetary damages as well as a declaratory judgment that his stock be restored to 33.33%. Gundala and Weyrauch answered and filed a counterclaim against Schaub. NFra filed its own answer.  In late 2011, NFra filed a motion for protective order pursuant to Arizona Rule of Civil Procedure 37(a)(4)(C), seeking to avoid producing documents sought by Schaub. [1]

---

[1] The documents included NFra's financial records, customer, vendor and employee contracts and related correspondence, tax returns, and personnel files.

¶4 After oral argument in February 2012, the trial court granted NFra's motion for protective order, finding that the scope of the proposed protective order was reasonable and that NFra had demonstrated good cause that a protective order was "necessary to protect confidential, financial, employment, sensitive and trade secret information." The court further denied Schaub's motion to compel production of documents. NFra filed an application for award of attorneys' fees and costs in February 2012, and the court awarded NFra a judgment for $12,360 as a sanction pursuant to Arizona Rule of Civil Procedure 37. Schaub did not appeal from the judgment.

¶5 Trial was set for September 2013. In March 2013, NFra sought to attach plaintiff's stock to satisfy the $12,360 judgment. Schaub filed a motion to stay the enforcement of the judgment. NFra filed a response and Schaub filed a second motion to expedite motion for stay and request for creditor garnishment bond. After oral argument, the trial court stayed the judgment until "the claims against [NFra] have been disposed of at the trial court level (either on motion or through trial)," conditioned on Shchaub posting $13,200 cash or bond with the court by May 3, 2013. After the court ruled that it would stay the judgment, Schaub's counsel asked the court to order NFra to post a creditor bond "in case there's a wrongful garnishment of the stock." The court declined to order NFra to post a creditor bond at that time, stating:

> This garnishment's going to be discharged . . . the first full week of May. Your clients are free to do with their stock whatever they wish to do with it after the discharge assuming this plan goes into effect. They post the bond on or before May 3rd . . . and [NFra is] going to file . . . a simple order for me to sign discharging the garnishee. Then your . . . client's stock is freed up and they can do with it what they will . . . [A]m I missing something? . . . They don't have to post [the bond]. If they don't want to they can just tell me now . . . and we can go forward with the garnishment.

Counsel for Schaub responded:

> MR. MCGILL: And they're going to try to do that . . . and I believe that they will do that, okay, but what I'm suggesting is any time I've ever

seen a case where a creditor goes in to garnish an asset that purportedly far exceeds the judgment that's involved . . . the Court has ordered that the creditor post a bond in the event there's a wrongful attachment. . . . That's why I ask.

THE COURT:  And how would that come into play here? You would have me have [NFra] post the bond when and for what?

MR. MCGILL:  In the event that the stock is wrongfully executed upon.  We don't think that will happen because it'll be bonded and discharged.  I am suggesting that to you, I agree with you.  That may never happen is [sic] this bond doesn't discharge . . . but if that doesn't happen, if that scenario where they're damaged by a wrongful judgment could happen.

THE COURT:  You've gone quite a ways from what you were telling me last time.  The last time you were here, I thought I asked it pretty directly, that your clients have no intent of allowing the stock to be sold at a sheriff's auction?

MR. MCGILL:  That's true.

THE COURT:  They plan on either . . . paying the judgment . . . [or] putting up a bond which is what I've ordered.

. . .

MR. MCGILL:  That's the intent but I don't know how events are going to unfold in the future. . . . [H]opefully that all happens . . . that is their good-faith intent and this may all be mute [sic] because of that but all I'm suggesting . . . is any time I've seen a creditor try to move against an asset that has value that far exceeds the judgment, the Court orders the creditor to

4

bond it in the event there's a wrongful attachment . . ..

THE COURT: Most certainly I will allow your client to file supplement briefing by May 15th on that issue. . . . With respect to the objection to the Writ of Garnishment, at this point I'm going . . . to wait [until] after May 3rd to see if that's mute [sic]. I believe that would be mute [sic] if the bond is posted.

In its April 29, 2013 minute entry order, the court denied Schaub's second motion to expedite motion for stay and request for garnishment bond as moot.

**¶6**        Schaub filed a cash bond in the amount of $13,200 on May 2, 2013. On May 15, 2013, he filed a motion seeking a creditor's bond pending trial. NFra filed a response objecting to the motion and seeking sanctions against Schaub and McGill pursuant to Arizona Revised Statutes (A.R.S.) § 12-349(B) (2003). On June 5, 2013, NFra filed a notice of quashing the writ of garnishment. Also in June 2013, the trial court, based on the pleadings, granted NFra's motion for sanctions. The court ordered additional briefing on the issue of the appropriate sanction. Subsequently, the court awarded NFra $4,160 against Schaub and McGill jointly and severally, as a sanction for unreasonably expanding the proceedings.

**¶7**        The court entered its signed order on September 6, 2013. Schaub and McGill filed a motion for new trial and request for evidentiary hearing with regard to the award for sanctions. The trial court denied the motion in a signed minute entry order, ruling:

> Most of the issues raised in Debtors' [Schaub and McGill] Motion have previously been addressed in the Court's rulings (Minute Entries dated June 17, 2013 and September 6, 2013) and will not be repeated here. A new issue urged by Debtors is that they have newly discovered evidence warranting a new trial under Rule 59(a)(4). Debtors point to the grant of their Rule 50 trial motion as new evidence. The ruling on the Rule 50 motion did not set aside the 2012 Judgment concerning Rule 37(a)(4)(B) sanctions or [NFra]'s efforts to collect

on the 2012 Judgment. Debtors also point to the evidence of the "book value" of stock as a basis for a new trial. Information concerning the value of the stock that [NFra] had previously attempted to execute upon does not alter whether it was reasonable for Debtors to seek the posting of a creditor bond. Once the stay of execution was granted, [NFra] could no longer seek to execute on the stock, whatever its value, to satisfy the 2012 Judgment.

The court further stated that it had denied Schaub and McGill's request for an evidentiary hearing because they sought to present evidence regarding whether they had brought a claim without substantial justification under A.R.S. § 12-349(A)(1) (2003), when the court's ruling for sanctions had been based on A.R.S. § 12-349(A)(3) (unreasonably expanding or delaying the proceeding). Schaub and McGill timely appealed. We have jurisdiction pursuant to A.R.S § 12-2101(A)(5)(a) (Supp. 2014).[2]

## DISCUSSION

¶8        Appellants raise two issues in this appeal:  1) whether the trial court abused its discretion by sanctioning them pursuant to A.R.S. § 12-349(A)(3), and 2) whether the trial court's decision denying their request for an evidentiary hearing violated their due process rights.

### A.  The A.R.S. § 12-349(A)(3) Sanction

¶9        The trial court sanctioned appellants $4,160 in attorneys' fees for unreasonably expanding the proceedings by filing a motion seeking a creditor's bond. We view the evidence in a manner most favorable to sustaining an award pursuant to A.R.S. § 12-349(A) and will affirm unless the trial court's findings are clearly erroneous. *Phoenix Newspapers v. Dept. of Corrections*, 188 Ariz. 237, 243, 934 P.2d 801, 807 (App. 1997). We review the appropriateness of the sanction under an abuse of discretion standard. *Gilbert v. Board of Med. Exam'rs*, 155 Ariz. 169, 184, 745 P.2d 617, 632 (App. 1987) (citation omitted), *abrogated by statute on other grounds.* We review the trial court's denial of a motion for new trial for an abuse of discretion.

---

[2] On December 11, 2014, appellants filed a motion to correct the record on appeal to include the 2014 activity in the case below, CV 2010-098263. We deny the motion.

*Monaco v. HealthPartners of S. Ariz.*, 196 Ariz. 299, 304, ¶ 13, 995 P.2d 735, 740 (App. 1999).

¶10      Section 12-349 provides, in relevant part:

> A.   Except as otherwise provided by and not inconsistent with another statute, in any civil action . . . the court shall assess reasonable attorney fees, expenses and, at the court's discretion, double damages of not to exceed five thousand dollars against an attorney or party . . . if the attorney or party does any of the following:
>
> . . .
>
> 3.  Unreasonably expands or delays the proceeding.
>
> . . .
>
> B.   The court may allocate the payment of attorney fees among the offending attorneys and parties, jointly or severally, and may assess separate amounts against an offending attorney or party.

Section 12-350 (2003) requires the court to set forth specific reasons for an award of attorneys' fees pursuant to A.R.S. § 12-349.

¶11      Here, the trial court found that the statute cited by appellants in support of its request for a creditor's bond, A.R.S. § 12-1573[3], was not applicable because a judgment had been entered against Schaub in May 2012. In its June 19, 2013 minute entry ruling, the court found that appellants unreasonably expanded the proceedings by seeking a creditor's bond because section 12-1573 "applies in the context of pre-judgment garnishments." The court further noted that appellants filed their motion for creditor bond on May 15, 2013, "*[a]fter* their stay of execution was

---

[3] A.R.S. § 12-1573 (2003) provides, in relevant part: "If a garnishment is requested *and no judgment has been entered*, a writ shall not be issued until the judgment creditor executes and delivers to the court a bond payable to the judgment debtor in the amount of the debt claimed therein . . . ." (Emphasis added).

granted and they had posted [the required $13,200]."   (Emphasis added).  In its September 9, 2013 minute entry, the court found that it had not authorized the appellants to file "an entirely new motion relying on A.R.S. § 12-1573."

¶12        On this record we cannot say that the trial court's finding that appellants unreasonably expanded or delayed the proceedings was clearly erroneous or that imposition of the sanction was an abuse of discretion.  The trial court correctly concluded that section 12-1573 did not provide authority for a creditor's bond after judgment had already been entered, and Schaub's stock was secure from attachment once he posted the cash bond with the court and the writ of garnishment was quashed.

## B.  The Request for Evidentiary Hearing

¶13        After both sides submitted briefing on the motion for creditor bond, the trial court determined that oral argument would not benefit the court and vacated the oral argument it had previously set for June 18, 2013.  The court denied appellants' subsequent requests for an evidentiary hearing.  Appellants argue that the trial court's denial of its requests for an evidentiary hearing violated their due process rights and was an abuse of discretion.  We disagree.  The trial court repeatedly noted that it had not been presented with an issue which would require an evidentiary hearing, in light of the fact that it imposed the sanction solely pursuant to A.R.S. § 12-349(A)(3).   Furthermore, neither A.R.S. § 12-349 nor A.R.S. § 12-350 requires a hearing.   We find no abuse of discretion or violation of appellants' due process rights.

## C.  Attorneys' Fees

¶14        Both sides request their attorneys' fees and costs on appeal.

Neither party cites statutory authority for their attorneys' fees request. We deny both requests for attorneys' fees and appellants' request for costs. Subject to its compliance with Arizona Rule of Civil Appellate Procedure 21, we award NFra its costs in connection with this appeal.

## CONCLUSION

**¶15** For the foregoing reasons, we affirm the judgment of the trial court in favor of NRra for $4160.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama