IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SHELLEY MAGNESS and COLORADO
STATE BANK & TRUST COMPANY, N.A.,
Co-Trustees of The Shelley Magness Trust
UDA 6/25/2000, *Plaintiff/Appellee,*

*v.*

ARIZONA REGISTRAR OF CONTRACTORS, *Defendant/Appellant.*

No. 1 CA-CV 13-0184
FILED 4-8-2014

Appeal from the Superior Court in Maricopa County
No. CV2011-056468
The Honorable John R. Doody, Commissioner

**VACATED AND REMANDED**

COUNSEL

Davidson, Lester & Kaffer, PLLC, Scottsdale
By Frederick E. Davidson, Brian G. Lester, Chad R. Kaffer
*Counsel for Plaintiff/Appellee*

Arizona Attorney General's Office, Phoenix
By Michael Raine
*Counsel for Defendant/Appellant*

**OPINION**

Judge Michael J. Brown delivered the Opinion of the Court, in which Acting Presiding Judge Margaret H. Downie and Chief Judge Diane M. Johnsen joined.

**B R O W N,** Judge:

¶1 The Arizona Registrar of Contractors ("ROC") appeals the superior court's order directing the ROC to issue payment from the Residential Contractors' Recovery Fund ("the Fund") to Shelley Magness and Colorado State Bank & Trust Company, as co-trustees of the Shelley Magness Trust ("Magness"). For reasons that follow, we vacate the superior court's order and remand for further proceedings.

**BACKGROUND**

¶2 In September 2008, Magness and Lendo Management LLC ("Lendo") entered a contract for Lendo to construct a "bath addition" to a house owned by Magness for the sum of $49,375.[1] The contract stated "that additional work could be undertaken in accordance with Change Orders." Two months later, the parties entered a second contract that provided for additional remodeling work to be performed for the sum of $38,899 and included the same change order clause as the first contract.

¶3 Work on the project began in October 2008, and continued through December 2009. During construction, Magness approved numerous change orders. By late December 2009, Magness had paid Lendo $366,123.27. At that point, Lendo stopped working even though all the contracted work was not yet completed. Magness unsuccessfully attempted to contact Lendo to seek redress for the uncompleted work and eventually paid other contractors to finish the project.

¶4 In April 2010, Magness filed a complaint against Lendo with the ROC, which issued a citation naming Lendo. When Lendo failed to file a response, an Administrative Law Judge ("ALJ") entered a decision

---

[1] It is undisputed that Lendo did not become a licensed contractor until March 4, 2009.

and order adopting the allegations of the complaint and revoking Lendo's license.

**¶5**         In November 2011, Magness filed a complaint against Lendo in superior court alleging numerous claims, including breach of contract, unjust enrichment, and conversion.  Magness also named the ROC as a defendant, alleging it was entitled to recover from the Fund based on claimed damages of $17,461.45 ($8,619.40 for unperformed work, $1,030.00 for reimbursement of charges paid to Lendo for completion of the unperformed work, and $7,812.05 for reimbursement of funds paid to Lendo that should have been paid to subcontractors and suppliers).

**¶6**         In its answer, the ROC responded it was "without sufficient knowledge to form a belief as to whether [Magness] is entitled to recovery from the Fund[.]"   The ROC also maintained that any award from the Fund is statutorily limited to "the actual damages suffered by the claimant as a direct result of the contractor's violations" and "[o]nly those persons injured as defined by [Arizona Revised Statute ("A.R.S.") section] 32-1131 are eligible for recovery from the Fund."   The ROC requested that the court deny Magness any recovery from the Fund unless Magness could demonstrate eligibility under A.R.S. §§ 32-1131 and -1132(A) and compliance with A.R.S. § 32-1136.

**¶7**         Lendo did not answer as required by Arizona Rule of Civil Procedure (Rule) 12(a)(1)(A) and Magness filed an application for entry of default and motion for entry of judgment by default without a hearing. The superior court entered a default judgment against Lendo.  As relevant to the Fund claim, the court awarded Magness damages against Lendo in the amount of $17,461.45.  In response, the ROC filed a notice stating it did not object to the entry of default judgment against Lendo, but that it did "not waive any objections it has to a payout from the [F]und" and "reserve[d] the right to object to an order directing payment from the Fund for any other applicable reasons," citing A.R.S. §§ 32-1131 -1140.

**¶8**         Magness then filed an application for an order directing payment from the Fund.   The ROC objected, asserting Magness's application did not satisfy statutory requirements because Magness failed to (1) establish "eligibility for payment" as a "person injured" because the house was owned by a trust; (2) demonstrate that Lendo held a contractor's license at the relevant time period; or (3) limit the claim to "actual damages."   The ROC requested that, at a "minimum," the court "order a hearing requiring [Magness] to prove these matters."    The superior court entered an unsigned minute entry granting Magness

recovery from the Fund in the amount of $14,067.39 ($17,461.45 less $3,394.06 that Magness had recovered from Lendo's contractor's bond). The ROC moved for reconsideration, requesting an evidentiary hearing to resolve factual issues relevant to Magness's eligibility to recover from the Fund. The superior court summarily denied the ROC's motion and entered a signed order directing payment from the Fund. The ROC timely appealed.

## DISCUSSION

¶9 The ROC argues the superior court erred by entering an order of payment because Magness failed to demonstrate eligibility, under the relevant statutes, to recover the awarded damages from the Fund. Additionally, the ROC contends it was entitled to a hearing before such an order of payment could be entered.

¶10 As a preliminary matter, we reject Magness's argument that because it obtained a default judgment against Lendo awarding damages in the amount of $17,461.45 on its Fund claim, the ROC's challenges to Magness's eligibility to recover from the Fund are precluded. As expressly stated in Rule 55(a), default may be entered only against a party who has failed to plead or otherwise defend. Here, the ROC filed an answer challenging Magness's eligibility to recover from the Fund before an application for default was filed. Therefore, no entry of default against the ROC could have occurred and the default judgment against Lendo did not eliminate the ROC's right to object to the subsequent application for payment from the Fund.[2]

¶11 Under the governing statutes (A.R.S. §§ 32-1132, -1136), however, a party need not secure a judgment against the ROC as a

---

[2] To the extent Magness argues that the ALJ's decision in the license revocation proceeding bars the ROC's challenges on appeal, we likewise reject that claim. The ALJ's order adopted Magness's allegations that Lendo violated the parties' contracts by failing to perform all of the work specified. But the ALJ's order did not establish that Magness was entitled to recover from the Fund; instead, the order expressly noted that Magness would not be eligible to recover from the Fund if it denied the contractor the opportunity to complete the work. Furthermore, Magness did not seek payment from the Fund based on the ALJ's order as provided for in A.R.S. § 32-1154 (setting forth the administrative remedy for collecting from the Fund).

prerequisite to recovering from the Fund. Section 32-1132(A) sets forth the overall eligibility requirements:

> The residential contractors' recovery fund is established, to be administered by the registrar, from which any person injured by an act, representation, transaction or conduct of a residential contractor licensed pursuant to this chapter that is in violation of this chapter . . . may be awarded . . . an amount of not more than thirty thousand dollars for damages sustained by the act, representation, transaction or conduct. An award from the fund is limited to the actual damages suffered by the claimant as a direct result of the contractor's violation but shall not exceed an amount necessary to complete or repair a residential structure. . . . An award from the fund shall not be available to persons injured by an act, representation, transaction or conduct of a residential contractor who was not licensed pursuant to this chapter or whose license was in an inactive status, expired, cancelled, revoked, suspended or not issued at the time of the contract.

After obtaining a judgment against a residential contractor, the "injured person" may apply to the superior court for an order directing payment from the Fund. A.R.S. § 32-1136(B). If the injured person has given twenty days' notice to the ROC, "the court may direct payment out of the fund either on receipt of a consent to payment signed on behalf of the registrar or, in the absence of any written consent, after the notice period[.]" *Id.* If the ROC files a timely written objection with the court, however, "the court shall not direct payment from the fund without affording the registrar *a reasonable opportunity to present and support its objections*." *Id.* (emphasis added). Thus, § 32-1136(B) establishes the ROC's procedural rights—notice and an opportunity to be heard in a meaningful manner.

¶12　　　In this case, it is undisputed that Magness timely notified the ROC that it was applying for court-ordered payment from the Fund. In response, the ROC filed a timely written objection to Magness's application for payment, arguing Magness had failed to demonstrate its eligibility. Citing § 32-1131, which defines "person injured," in relevant part, as "any owner of residential real property . . . which is actually occupied or intended to be occupied by the owner as a residence," the ROC argued that Magness, as a trustee, did not qualify as both the requisite owner and occupier of the property. Moreover, because it is

undisputed that Lendo was not a licensed contractor at the time Magness and Lendo entered the first and second contracts, the ROC argued Lendo was not a licensed contractor "at the time the parties enter[ed] into the contract" under § 32-1132(A). In addition, accepting the allegations of Magness's complaint as true, the ROC asserted that Magness's requested damages ($14,067.39) exceeded those permitted by statute because Magness paid other contractors only $8,619.40 to complete the contracted work. Finally, the ROC argued that § 32-1136(B) required the superior court to hold a hearing to address the ROC's written objections before ordering payment from the Fund.

¶13        Magness countered that Shelley Magness, as the sole beneficiary of the Trust, qualified as a "person injured" under the statute. Magness did not dispute that Lendo was unlicensed at the time the first and second contracts were formed, but maintained that each of the numerous subsequent change orders was a contract for purposes of § 32-1132 and noted that many of them were entered after Lendo obtained a contractor's license. Magness also claimed that the ROC could not challenge the amount to be recovered from the Fund because the award of damages was established by the superior court's default judgment. Finally, Magness argued that a hearing was not statutorily required and the ROC's request for a hearing should be denied.

¶14        The superior court implicitly denied the ROC's request for a hearing and "grant[ed] recovery to Magness in the amount of $14,067.39" without expressly addressing any of the ROC's objections. Thus, as a threshold matter, we consider whether the superior court "afford[ed] the registrar a reasonable opportunity to present and support its objections." A.R.S. § 32-1136(B).

¶15        "The interpretation of a statute is a question of law that we review de novo." *Bonito Partners, L.L.C. v. City of Flagstaff,* 229 Ariz. 75, 83, ¶ 30, 270 P.3d 902, 910 (App. 2012). "We interpret statutes to give effect to the legislature's intent, looking first to the statutory language itself." *Baker v. Univ. Physicians Healthcare,* 231 Ariz. 379, 383, ¶ 8, 296 P.3d 42, 46 (2013). We strive to give effect to each word or phrase of the statute. *Guzman v. Guzman,* 175 Ariz. 183, 187, 854 P.2d 1169, 1173 (App. 1993). When construing a statute, "we examine its individual provisions in the context of the entire statute to achieve a consistent interpretation." *State v. Gaynor-Fonte,* 211 Ariz. 516, 518, ¶ 13, 123 P.3d 1153, 1155 (App. 2005) (citation omitted). "Indeed, if statutes relate to the same subject and are thus in *pari materia*, they should be construed together . . . as though they constituted one law." *Bonito,* 229 Ariz. at 83, ¶ 30, 270 P.3d at 910.

¶16 Section 32-1136, which sets forth the process for obtaining payment from the Fund, expressly states that recovery is "subject to the limitations stated in this article." Considered in context with the other statutes governing Fund eligibility, § 32-1136 necessarily includes the threshold eligibility requirements set forth in § 32-1132(A), which, if not met, bar recovery from the Fund. In addition, § 32-1136 (D) provides:

> The court shall proceed on an application in a summary manner and, *on the hearing*, the injured person is required to show that he:
>
> (1) Has given notice as required [twenty day notice to the registrar].
>
> (2) Has obtained a judgment which has become final . . . stating the amount and the amount owing at the date of the application.
>
> (3) Has proceeded against any existing bond covering the residential contractor and has not collected upon such bond an amount of thirty thousand or more [except when the award is made pursuant to an administrative proceeding].
>
> (4) Is not aware of any personal or real property or other assets of the debtor which can be applied in satisfaction of the judgment.

(Emphasis added.) By its plain language, subsection D contemplates a hearing when the ROC has objected to an application for payment. Nonetheless, Magness argues that because none of the requirements outlined in subsection D is contested in this case, no hearing was necessary. We do not construe the scope of the hearing referenced in § 32-1136(D) so narrowly. The statute establishes a list of minimum requirements the injured person must prove. When, as here, the ROC challenges an applicant's lack of compliance with requirements set forth elsewhere in the governing statutes, the applicant must also demonstrate that those statutory prerequisites have been satisfied.

¶17 This construction of § 32-1136(D) gives effect to each of the relevant provisions of the statutory scheme governing eligibility for payment from the Fund. *See Guzman*, 175 Ariz. at 187, 854 P.2d at 1173 ("It is a cardinal rule of construction that statutory provisions must be considered in the context of the entire statute and consideration must be

given to all of the statute's provisions to determine the legislative intent manifested by the entire act."). Notwithstanding the four conditions listed in subsection D, subsection E provides that the "court shall make an order directed to the registrar requiring payment from the fund of *whatever sum it finds to be payable on the claim*, in accordance with this section, if the court is satisfied on the hearing of the truth of all matters required to be shown by the injured person by subsection D of this section." (Emphasis added.) The phrase "whatever sum it finds to be payable on the claim" denotes the court's discretion to evaluate and determine the amount due under the statutes. In addition to establishing "actual damages," a person seeking payment from the Fund must satisfy other eligibility requirements that are not included in subsection D, such as (1) proving "person injured" status under § 32-1131(3) and (2) establishing that the contractor was properly licensed at the time of the contract under § 32-1132(A).

**¶18** In sum, an applicant seeking recovery from the Fund through a civil remedy must obtain a judgment against the contractor *and* meet all of the remaining statutory eligibility requirements. Thus, we are not persuaded by Magness's argument that the scope of the hearing referenced in § 32-1136(D) is strictly limited to the four requirements of that section because doing so would nullify the eligibility requirements of § 32-1132 and undermine a key purpose of the Fund, namely, to compensate homeowners who have been harmed by *licensed* contractors. *See Koss Corp. v. Am. Exp. Co.*, 233 Ariz. 74, 79, ¶ 12, 309 P.3d 898, 903 (App. 2013) (noting that statutes should not be construed in a manner that would lead to an absurd result, conflict with legislative intent or "be contrary to the rest of the statutory scheme"). Similarly, Magness's reading of the statute would deprive the ROC of its statutory right to present and support its objections and would improperly relieve an "injured person" of the burden of demonstrating eligibility for payment from the Fund. We therefore conclude the superior court erred in summarily granting Magness's application for payment.[3]

---

[3] Based on our resolution of the hearing issue, we express no opinion regarding the merits of the ROC's challenges to Magness's eligibility to recover from the Fund and remand those matters for consideration by the superior court in the first instance. On remand, the superior court is in the best position to determine the scope of the hearing needed to determine whether Magness has met its burden of establishing eligibility for payment from the Fund, recognizing the need to consider Magness's application in a "summary manner." *See* A.R.S. § 32-1136 (D).

**¶19**      Magness has requested an award of attorneys' fees pursuant to A.R.S. § 12-348, which provides that "a court shall award fees and other expenses to any party . . . which prevails by an adjudication on the merits" in a "court proceeding to review a state agency decision[.]"  Magness has not prevailed on appeal and, in any event, "the provisions of A.R.S. § 12-348 do not apply to attorneys' fees awarded from the Fund."  *Shelby v. Ariz. Registrar of Contractors*, 172 Ariz. 95, 100, 834 P.2d 818, 823 (1992); *see also* A.R.S. § 32-1132(A) (stating that "monies in the residential contractors' recovery fund shall not be directly awarded for attorney fees or costs except in contested cases appealed to the superior court" via an administrative remedy.).  Therefore, we deny the request.

## CONCLUSION

**¶20**      Because the ROC was not afforded its statutory right to present and support its objections, we vacate the superior court's order directing payment from the Fund and remand for further proceedings consistent with this opinion.



Ruth A. Willingham · Clerk of the Court
F I L E D : MJT