334 P.3d 771

**In re the Marriage of Sandra Lynn BALAZIC, Petitioner/Appellee,**

v.

**Kenneth Brian BALAZIC, Respondent/Appellant.**

**No. 1 CA–CV 13–0435.**

Court of Appeals of Arizona, Division 1.

Sept. 23, 2014.

Myers & Associates PLLC, By Jamie N. Myers, Scottsdale, for Petitioner/Appellee.

Kenneth A. Winsberg P.C., By Kenneth A. Winsberg, Phoenix, for Respondent/Appellant.

Presiding Judge KENT E. CATTANI delivered the opinion of the Court, in which Judge MARGARET H. DOWNIE and Judge MICHAEL J. BROWN joined.

## OPINION

CATTANI, Judge:

¶ 1 In *Glover v. Glover*, 231 Ariz. 1, 289 P.3d 12 (App.2012), this court ruled that deficiencies in registration under Arizona's version of the Uniform Interstate Family Support Act ("AUIFSA"), Arizona Revised Statutes ("A.R.S.") §§ 25–1201 to –1342,[1] deprive Arizona courts of subject matter jurisdiction to *modify* a child support order from another state, even absent a timely objection to the registration deficiencies. *Glover* left unanswered, however, the question we now

address: whether unobjected-to deficiencies in registration under AUIFSA deprive Arizona courts of subject matter jurisdiction to *enforce* a foreign child support order.

¶ 2 We conclude that the difference between seeking to modify and seeking to enforce is significant, and that registration deficiencies do not create a jurisdictional bar to consideration of a petition to enforce a foreign child support order. Unlike modification proceedings, enforcement proceedings do not create a risk that an Arizona order will conflict with an order from another state. Thus, an enforcement proceeding does not implicate the "one-order" concern underlying AUIFSA and underpinning this court's ruling in *Glover*. Accordingly, and for reasons that follow, we hold that unobjected-to deficiencies in registration do not deprive Arizona courts of jurisdiction to enforce a child support order issued by a court in another state.

## FACTS AND PROCEDURAL BACKGROUND

¶ 3 Kenneth Brian Balazic ("Father") and Sandra Lynn Balazic ("Mother") divorced in 2000. A North Carolina consent order specified that Mother would have primary legal custody of their four minor children and that Father would make weekly child support payments. Mother subsequently moved with the children to Arizona, and Father moved to Pennsylvania. In February 2009, Mother filed in Maricopa County Superior Court a certified copy of the North Carolina consent order, along with a notice of filing and an affidavit substantiating the foreign judgment.

¶ 4 In January 2011, Mother filed a petition requesting that the superior court enforce Father's child support obligations. Mother alleged that Father was $95,940 in arrears based on his failure to make timely child support payments after the consent order was entered.

¶ 5 In May 2011, Father was personally served in Pennsylvania with "support papers," apparently including the petition and an order to appear at a June 9 hearing.

1. Absent material revisions after the relevant date, we cite a statute's current version.

Father requested that the hearing be continued thirty days, and the superior court granted Father's request and rescheduled the hearing for August 19.

¶ 6 Father did not appear at the August hearing. Because Father had notice of the hearing and had not offered a reason for his absence, the superior court went forward with the hearing. The court noted that the couple's youngest child turned 18 on June 30, 2011, at which time Father's prospective child support obligations terminated, although he remained obligated to pay any arrearages. Based on a calculation of Father's underpayments since October 2003, the court entered judgment against Father for arrearages totaling $128,681.26 (representing $93,913.72 in arrears plus $34,767.54 in interest) and terminated Father's ongoing support obligations.

¶ 7 More than 18 months later (and shortly after this court's decision in *Glover*), Father moved to set aside the judgment as void, arguing that the superior court lacked subject matter jurisdiction to enforce the North Carolina child support order. *See* Ariz. R. Fam. Law P. 85(C)(1)(d) (authorizing relief from a void judgment). Father asserted in particular that Mother, whose 2009 filings stated that she was domesticating the consent order in Arizona pursuant to Arizona's Uniform Enforcement of Foreign Judgments Act ("AUEFJA"), A.R.S. §§ 12–1701 to –1708, had not complied with AUIFSA's requirements for registering a foreign child support order because she did not include a letter of transmittal and a sworn statement of the amount owed. Father argued that, under *Glover*, absent proper AUIFSA registration, the superior court lacked subject matter jurisdiction to enforce the support order.

¶ 8 After briefing and oral argument, the superior court denied Father's motion. The court reasoned that *Glover*, which only addressed jurisdiction over modification proceedings, did not apply to Mother's request to enforce the North Carolina support order. The court further found that Mother's registration filings, coupled with her enforcement filings, satisfied AUIFSA's registration requirements, and that Father had not established a defense to the support order. Father timely appealed.

## DISCUSSION

¶ 9 The superior court has authority to decide child support issues as part of its subject matter jurisdiction over domestic relations matters. Ariz. Const. art. VI, § 14(1), (9); A.R.S. §§ 25–311, –320. We review the superior court's subject matter jurisdiction de novo as an issue of law. *Glover*, 231 Ariz. at 6, ¶ 18, 289 P.3d at 17.

¶ 10 AUIFSA sets forth specific procedural requirements to register a foreign support order in Arizona, including that the superior court be provided with (1) a "letter of transmittal" requesting that the court register and enforce the order, (2) two copies of the order (one certified), (3) a sworn or certified statement of the amount owed in arrears, and (4) information regarding the obligor and obligee. A.R.S. § 25–1302(A)(1)–(5). These requirements specific to registering support orders are different than the more general procedures for registering other types of judgments. *Compare* A.R.S. § 25–1302(A)(1)–(5), *with* A.R.S. §§ 12–1702, –1703. In *Glover*, we held that, as a matter of procedure, the only way to register a child support order issued in another state is to comply with the provisions of AUIFSA, as set forth in A.R.S. § 25–1302, and that complying with the procedures of AUEFJA—as Mother did in this case—is not enough. 231 Ariz. at 5, ¶ 17, 289 P.3d at 16.

¶ 11 As noted above, in Father's motion to set aside the superior court's order, he raised Mother's failure to provide the court with a letter of transmittal and a sworn statement regarding the amount of arrearages when she registered the North Carolina order in Arizona. But Father did not timely object to the superior court's enforcement order on this (or any other) basis, and he in fact made the $1,000 monthly arrearages payments (through wage withholding) for at least 18 months after the court entered judgment.

¶ 12 Father's failure to object precludes relief unless Mother's failure to comply with the registration requirements was not just a procedural defect, but a jurisdic-

tional one. *See Health For Life Brands, Inc. v. Powley*, 203 Ariz. 536, 538, ¶¶ 11–12, 57 P.3d 726, 728 (App.2002) (recognizing that procedural defects may be waived if no objection is timely raised, whereas a lack of subject matter jurisdiction cannot be waived).

¶ 13 Father argues that *Glover* controls, and he asserts that for jurisdictional purposes, the distinction between an action to modify and one to enforce an out-of-state support order is not significant. We conclude otherwise because the distinction between these two types of proceedings is critical to AUIFSA and the Uniform Interstate Family Support Act (2001) ("Uniform Act") on which AUIFSA is based.

¶ 14 A key feature of the Uniform Act is its requirement that only one child support order be in effect at any given time. *See* Uniform Act § 611 cmt. ("Without doubt, [the one-order system] is the most significant departure from the multiple-order system established by the prior Uniform Act."); *see also* 28 U.S.C. § 1738B(a), (f) (requiring that each state give full faith and credit to a child support order properly entered by another state and setting forth rules for determining which order to recognize if other orders have been issued). To effectuate the one-order system and avoid competing orders, the Uniform Act grants the issuing state continuing, exclusive jurisdiction to modify the order unless and until another state modifies the order in accordance with the Uniform Act's procedures. Uniform Act § 205 & cmt.; A.R.S. § 25–1225; *see also* A.R.S. § 25–1311(E) (stating that Arizona assumes continuing, exclusive jurisdiction when Arizona court issues a modified order). *Compare* Uniform Act § 206; A.R.S. § 25–1226 (stating that issuing tribunal retains continuing—but not exclusive—jurisdiction to enforce its order).

¶ 15 *Glover*'s analysis of registration as a jurisdictional requirement for modification proceedings is consistent with the policy of a one-order system in which a court that issues an order maintains continuing, exclusive jurisdiction to modify the order. *See* 231 Ariz.

at 7, ¶ 21, 289 P.3d at 18 ("Our interpretation of § 25–1313 preserves this 'one-order' system carefully put in place by [the Uniform Act] and [federal law]."). And stringent jurisdictional requirements ensure that due process protections are in place before another state may commence a modification proceeding, which by its nature is intended to change the rights and duties of the parties as set forth in the issuing state's order.

¶ 16 In contrast, a proceeding intended only to enforce an out-of-state child support order does not present the same implications for the one-order system or the rights of the parties. Because an enforcement action recognizes only the existing order, it does not result in competing support orders. Nor does an enforcement action modify the parties' obligations; those are already set forth in the existing order.

¶ 17 The Comment to the Uniform Act recognizes this distinction:

Registration is subdivided into distinct categories: registration for enforcement, for modification, or both. [The Uniform Act] is based on recognizing the truism that when an out-of-state support order is registered, the rights and duties of the parties affected have been previously litigated. Because the obligor already has had a day before an appropriate tribunal, an enforcement remedy may be summarily invoked. On the other hand, modification of an existing order presupposes a change in the rights or duties of the parties. The requirements for modification of a child-support order are much more explicit under [the Uniform Act], which allows a tribunal to modify an existing child-support order of another State only if certain quite limited conditions are met.

Uniform Act § 611 cmt.

¶ 18 The language of AUIFSA, which is Arizona's version of the Uniform Act, similarly bears out this distinction. To be sure, under AUIFSA, provisions relating to registration requirements for enforcement proceedings and for modification proceedings are identical.[2] *See, e.g.*, A.R.S. §§ 25–1303(C) (addressing enforcement of a regis-

---

2. A.R.S. §§ 25–1309 to –1315 govern proceedings to modify (as well as proceedings to modify

and enforce) an out-of-state support order, while §§ 25–1301 to –1304 directly govern proceedings

tered order), –1313 (addressing modification of an existing order "in a proceeding to register that order"). But only the modification statutes speak to the Arizona court's jurisdiction. For example, § 25–1313, the statute governing modification "if individual parties reside in this state," describes certain circumstances in which "a tribunal of this state has *jurisdiction* to enforce and modify the issuing state's child support order in a proceeding to register that order." A.R.S. § 25–1313(A) (emphasis added). The statutes governing enforcement have no comparable provision creating additional jurisdictional prerequisites for an Arizona court. *See* A.R.S. §§ 25–1301 to –1304. The only mention of "jurisdiction" among the enforcement statutes is in the context of ensuring that the issuing tribunal had jurisdiction when it issued the order. *See* A.R.S. § 25–1303(C).

¶ 19 In interpreting a statutory scheme, we look first to the statutes' plain language to discern and effectuate legislative intent. *See Glover,* 231 Ariz. at 4, ¶ 12, 289 P.3d at 15. Moreover, we construe each individual statute within the context of the broader statutory scheme to ensure a harmonious interpretation of the whole. *See Magness v. Ariz. Registrar of Contractors,* 234 Ariz. 428, 432, ¶ 15, 323 P.3d 711, 715 (App. 2014). AUIFSA's silence on the subject of jurisdiction regarding enforcement of an out-of-state child support order contrasts with AUIFSA's express discussion of jurisdiction in connection with modification and thus leads to the conclusion that, although registration is a procedural requirement under AUIFSA for both enforcement and modifica-

to enforce, but not modify, a foreign support order. *See, e.g.,* A.R.S. §§ 25–1301 ("Registration of order for enforcement"), –1302 ("Procedure to register order for enforcement"), –1303 ("Effect of registration for enforcement"), –1309 ("Procedure to register child support order of another state for modification"), –1310 ("Effect of registration for modification"), –1311 ("Modification of child support order of another state"), –1313 ("Jurisdiction to modify child support order of another state if individual parties reside in this state"). The Uniform Act marks these divisions expressly. Uniform Law, art. 6, Part 1 ("Registration and Enforcement of Support Order"); Uniform Law, art. 6, Part 3 ("Registration and Modification of Child–Support Order").

tion proceedings, registration is not a jurisdictional requirement for enforcement proceedings.

¶ 20 We recognize that, in other circumstances, a failure to properly register an order for enforcement under AUIFSA may present due process questions of notice to the support obligor, because registration is the trigger for AUIFSA-specific notification procedures. But here, Father—who was served with the enforcement petition and in fact responded by requesting a continuance—does not argue that he lacked notice of the enforcement proceedings (although he notes that the form of notice under AUIFSA would have been different). Nor does Father challenge the existence or validity of the North Carolina child support order at issue or otherwise challenge the merits of the superior court's enforcement order (i.e., the amount of arrearages).[3] Accordingly, we conclude that the superior court properly exercised jurisdiction to enforce the North Carolina child support order and, therefore, did not err by denying Father's motion to set aside the judgment.

¶ 21 Both parties request an award of their attorney's fees incurred on appeal pursuant to A.R.S. § 25–324(A). In an exercise of our discretion, we deny both requests.

## CONCLUSION

¶ 22 The superior court's order denying Father's motion to set aside the judgment is affirmed.

**3.** Although Mother's registration filings did not include a verified amount of arrearages, her enforcement petition did so and was signed "under penalty of perjury." The superior court found that Mother's registration filings, coupled with her enforcement filings, satisfied the registration requirement of a sworn certified statement showing the amount of arrearages. Given our holding that defects in registration filings do not result in a jurisdictional bar to enforcement proceedings, we need not address whether the initial registration requirement may be satisfied by filings in subsequent proceedings.