IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JO ELLA RAMSEY, an individual, *Plaintiff/Appellee,*

*v.*

ARIZONA REGISTRAR OF CONTRACTORS, *Defendant/Appellant.*

No. 1 CA-CV 15-0355
FILED 11-1-2016

Appeal from the Superior Court in Maricopa County
No.  CV2010-003331
The Honorable Katherine M. Cooper, Judge

**VACATED AND REMANDED**

COUNSEL

Sanders & Parks, P.C., Phoenix
By G. Gregory Eagleburger, Nicholas A. Bender
*Counsel for Plaintiff/Appellee*

Arizona Attorney General's Office, Phoenix
By Michael Raine
*Counsel for Defendant/Appellant*

**OPINION**

Presiding Judge Kenton D. Jones delivered the Opinion of the Court, in which Judge Randall M. Howe and Judge Donn Kessler joined.

**J O N E S**, Judge:

¶1        The Arizona Registrar of Contractors (ROC) appeals the trial court's order directing the ROC to issue payment from the Arizona Residential Contractors' Recovery Fund (the Fund), Ariz. Rev. Stat. (A.R.S.) §§ 32-1131 to -1140,[1] to Jo Ella Ramsey.  The ROC argues the court erred by: (1) granting Ramsey's application for recovery when it did not contain evidence required by Arizona Rule of Civil Procedure 56 to support a motion for summary judgment; (2) interpreting the statutes governing recovery from the Fund in a manner that did not account for the amount left unpaid under the underlying contract; (3) declining to hold a hearing on the ROC's objection to Ramsey's application; and (4) finding the ROC had conceded a minimum amount Ramsey spent to complete the project at issue.

¶2        For the following reasons, we hold that an application for recovery from the Fund need not comply with Rule 56.  We also adopt the ROC's interpretation of "actual damages" and hold that damages for purposes of A.R.S. § 32-1132(A) are limited to the reasonable cost of repairing the contractor's defective work and completing the project, minus any portion of the contract price still unpaid to the original contractor. Additionally, we hold that a hearing is unnecessary when the ROC's objection presents a purely legal issue which it has had adequate opportunity to brief, and that, in the immediate case, substantial evidence supports the trial court's determination that the ROC conceded Ramsey spent at least $52,101.29 to complete her residential construction project. Accordingly, we vacate the court's order and remand for further proceedings consistent with this Opinion.

## FACTS AND PROCEDURAL HISTORY

¶3        In May 2010, Ramsey filed a complaint against Michael and Barbara Edens and Edens Contracting, L.L.C. (collectively, the Edens), seeking damages for deficiencies in the Edens' performance of a contract to build a residence for Ramsey (the Residence).  The ROC timely intervened to address whether Ramsey was eligible to recover from the Fund.  *See* A.R.S. § 32-1136(A).  In June 2013, the trial court entered a $111,000 judgment in Ramsey's favor against the Edens.

---

[1]        Absent material changes from the relevant date, we cite a statute's current version.

¶4        In August 2014, the ROC moved to dismiss the case, alleging Ramsey was not eligible for compensation from the Fund because she had not suffered any "actual damages" within the meaning of A.R.S. §§ 32-1132 and -1136(E) because the amount she spent to complete the Residence — $52,101.29 — was significantly less than the approximate $130,000 balance owed on her contract with the Edens. Ramsey objected to the request for dismissal and applied for an order directing the ROC to compensate her from the Fund.

¶5        The trial court treated the ROC's motion as an objection to Ramsey's application and, after the matter was fully briefed, entered an order directing the ROC to pay Ramsey $30,000, the maximum allowable amount, from the Fund. *See* A.R.S. § 32-1132(A). The court rejected the ROC's interpretation of the applicable statutes and held no hearing was necessary because the ROC had conceded Ramsey spent more than $30,000 to complete the Residence. The ROC timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**I.     Arizona Rule of Civil Procedure 56 Does Not Apply to an Application for Recovery from the Fund.**

¶6        The ROC first argues the trial court erred in granting Ramsey's application without an evidentiary hearing because she did not provide evidence within the application to prove the facts supporting her entitlement to payment from the Fund. The interpretation and application of statutes present questions of law, which we review *de novo*. *See First Fin. Bank, N.A. v. Claassen*, 238 Ariz. 160, 162, ¶ 8 (App. 2015) (citing *Schwarz v. City of Glendale*, 190 Ariz. 508, 510 (App. 1997)). When a statute is unambiguous, we apply its terms as written. *Berndt v. Ariz. Dep't of Corr.*, 238 Ariz. 524, 528, ¶ 11 (App. 2015) (quoting *Fleming v. Dep't of Pub. Safety*, 237 Ariz. 414, 417, ¶ 12 (2015)).

¶7        Pursuant to A.R.S. § 32-1136(B), a homeowner who obtains a valid judgment against a residential contractor for misconduct in violation of Title 32, Chapter 10, of the Arizona Revised Statutes, may apply to the trial court for an order directing payment out of the Fund for the amount unpaid on the judgment, up to $30,000. The ROC contends summary adjudication of a request for payment from the Fund is appropriate only if the applicant complies with Arizona Rule of Civil Procedure 56(c)(3), which requires a motion for summary judgment be accompanied by a statement of the "specific facts relied upon in support of the motion" and "refer[ence]

to the specific portion of the record where the fact may be found."  No such requirement appears in the statute.  Instead, A.R.S. § 32-1136(B) provides that the application for an order directing payment from the Fund should be granted "either on receipt of a consent to payment . . . or, in the absence of any written consent, after the notice period required by this subsection."  If the ROC objects to payment, it is entitled to an opportunity to present and support its objections.  A.R.S. § 32-1136(B).  Thus, the statute contemplates the application will be granted — without any testimony, evidence, proof, or hearing — if there is no objection.

¶8            It necessarily follows that testimony, documentary evidence, or other proof is required only as to those portions of the application to which the ROC has objected.  This interpretation is consistent with the direction that the application be addressed without delay.  *See* A.R.S. § 32-1136(D) ("The court shall proceed on an application [for recovery from the Fund] in a summary manner . . . ."); *Chaffin v. Comm'r of Ariz. Dep't of Real Estate*, 164 Ariz. 474, 477 (App. 1990) (defining the phrase "summary manner" within statutes governing the Real Estate Recovery Fund "to mean that the court must proceed on the application without delay or formality and in a short, concise and immediate proceeding") (citation omitted).  Indeed, this Court has already determined the trial court may limit the scope of a hearing on the applicant's eligibility to recover from the Fund after consideration of the ROC's specific challenges and the need to expedite its review.  *See Magness v. Ariz. Registrar of Contractors*, 234 Ariz. 428, 433 n.3, ¶ 18 (App. 2014).  Because the requirements of Arizona Rule of Civil Procedure 56 do not apply to an application for recovery from the Fund, there was no error in the procedure used by the court here.

**II.    The Proper Measure of Damages Under A.R.S. § 32-1132(A) is the Cost of Completion of the Project Less the Unpaid Portion of the Original Contract Price.**

¶9            The ROC argues the trial court erred in interpreting the governing statutes to prevent the ROC from offsetting the cost to complete a project by the amount left unpaid to the original contractor, an issue we review *de novo*.  *See supra* ¶ 6.

¶10           By statute, "[a]n award from the [F]und is limited to the actual damages suffered by the claimant as a direct result of the contractor's violation but shall not exceed an amount necessary to complete or repair a

residential structure." A.R.S. § 32-1132(A).[2] The phrase "actual damages" is not defined; therefore, we defer to the implementing agency's interpretation so long as it is "based on a permissible construction of the statute." *Kobold v. Aetna Life Ins.*, 239 Ariz. 259, 262, ¶ 9 (App. 2016) (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). "The relevant inquiry is whether the agency's interpretation is reasonable." *Id.* (citing *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001)). In addition, if the literal interpretation of a statute would lead to an absurd result, it is this Court's duty to construe it, if possible, so it is readable and workable. *Pendergast v. Ariz. State Ret. Sys.*, 234 Ariz. 535, 541, ¶ 18 (App. 2014) (quoting *State Farm Auto Ins. v. Dressler*, 153 Ariz. 527, 531 (App. 1987), and citing A.R.S. § 1-211(B) ("Statutes shall be liberally construed to effect[uate] their objects and to promote justice.")).

**¶11** The ROC interprets "actual damages" to mean the reasonable cost of completing the contract and repairing the contractor's defective performance "less the part of the contract price still unpaid."[3] This interpretation comports with both Arizona law and the Restatement of Contracts. *See Maricopa Cty. v. Walsh & Oberg Architects, Inc.*, 16 Ariz. App. 439, 441 (1972); *Sorensen v. Robert N. Ewing, Gen. Contractor*, 8 Ariz. App. 540, 544 (1968) (citing *Green Manor Constr. Co. v. Highland Painting Serv., Inc.*, 345 F.2d 657, 661 (1st Cir. 1965)); Restatement (First) of Contracts § 346(1)(a)(i), illus. 1, 4, 5 (1932) ("For a breach by one who has contracted

---

[2] Although not applicable here, there is an exception to this rule when "the claimant has paid a deposit or down payment and no actual work is performed or materials are delivered." A.R.S. § 32-1132(A). Under those circumstances, the award from the Fund "shall not exceed the exact dollar amount of the deposit or down payment plus interest at the rate of ten per cent a year from the date the deposit or down payment is made or not more than thirty thousand dollars, whichever is less." *Id.*

[3] The ROC also argues the amounts unpaid under the original contract constitute recovery from an "other source," which may be deducted from the amount recovered from the Fund pursuant to A.R.S. § 32-1136(E). Section 32-1136(E) states: "If the injured person has recovered a portion of his loss from sources other than the fund, the registrar . . . or the court shall deduct the amount recovered from other sources from the amount of actual damages suffered pursuant to [A.R.S.] § 32-1132, subsection A." Here, however, the amount due under the original contract has not been "recovered" by the homeowner and is not a "payment" within the plain meaning of the word, but rather, as explained herein, a factor in determining the homeowner's actual damages under A.R.S. § 32-1132(A).

to construct a specified product, the other party[] can get judgment for compensatory damages for all unavoidable harm that the builder had reason to foresee when the contract was made, less such part of the contract price as has not been paid and is not still payable . . . ."), *adopted by Blecick v. Sch. Dist. No. 18 of Cochise Cty.*, 2 Ariz. App. 115, 122-23 (1965), *overruled on other grounds by Donnelly Constr. Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 187 (1984); *cf.* Restatement (Second) of Contracts § 348(2), illus. 2 (1981) (stating a party may recover damages from defective or unfinished construction for the diminution in value, or, if difficult to ascertain, "the reasonable cost of completing performance or of remedying the defects if that cost is not clearly disproportionate to the probable loss in value to him").

¶12     This construction of the statute is also consistent with the general purpose of making a homeowner who suffers from a contractor's misdeeds "whole."  This can be best understood based upon the principle of expectation damages, which are intended to put the injured party "to the extent possible . . . in as good a position as he would have been in had the contract been performed."  Restatement (Second) of Contracts § 347 cmt. a, *cited favorably by AROK Constr. Co. v. Indian Constr. Servs.*, 174 Ariz. 291, 298 (App. 1993); *cf. John Munic Enters., Inc. v. Laos*, 235 Ariz. 12, 18, ¶ 18 (App. 2014) ("Enforcing the expectation interests of the parties is one of the principal goals of remedying a breach of contract.").  The calculation of expectation damages necessarily includes a deduction for "any cost or other loss that [the injured party] has avoided by not having to perform." Restatement (Second) of Contracts § 347(c).

¶13     Two hypotheticals underscore this principle.  For example, consider a homeowner who agrees to pay $100,000 to contractor A to build a garage.  Contractor A then stops work and breaches the contract while $90,000 of the original contract price remains unpaid.  The homeowner then agrees to pay contractor B $50,000 to both correct contractor A's mistakes and complete the garage, thereby obtaining the completed garage for $40,000 less than it would have cost under the original contract.  Under our holding, the homeowner would not be eligible to collect from the Fund because the amount remaining owed on the initial contract ($90,000) exceeds the amount it ultimately costs the homeowner to complete the garage ($60,000).  In other words, she has not suffered any "loss" where she has received a garage worth, to her, $100,000, after paying only $60,000 for its construction.   Allowing the homeowner additional recovery under the Fund would exceed what is proper as expectation damages.

¶14        If, on the other hand, the initial cost of the contract remains $100,000 and the amount paid to contractor A remains $10,000 but the reasonable cost for contractor B to correct contractor A's mistakes and complete the garage is $120,000, the homeowner may be eligible to recover from the Fund because, as a result of contractor A's breach, homeowner has to pay $130,000 for a garage worth $100,000. Under these circumstances, the homeowner can recover the amount of the difference left owing on the first contract ($90,000) and what it ultimately cost him to complete the garage ($120,000), or $30,000. The homeowner requires additional funds to be made "whole" because she has to pay more than originally anticipated to obtain the contracted-for product.

¶15        Ramsey argues the ROC's interpretation fails to account for the unscrupulous contractor, who inflates the cost of completing a project, performs poorly, and walks away. However, the Fund is not and was never intended to serve as a panacea for every ill-advised construction contract. To the extent a contractor breaches an unscrupulously inflated construction contract, the homeowner is in no worse shape as to her contracted-for expectations. Indeed, it can be argued the homeowner is actually in better shape upon breach because she ultimately received the desired result for less than anticipated, and further payout from the Fund is not required by A.R.S. § 32-1232(A).

¶16        Moreover, the agency's interpretation need not account for every contingency, nor be the most reasonable construction, to warrant deference. *Kobold*, 239 Ariz. at 262, ¶ 9 (citing *Mead*, 533 U.S. at 229, and *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009)). The ROC's interpretation of the statute eliminates the risk that a homeowner will receive a windfall as a result of the residential contractor's misconduct at the expense of the licensed contractors who contribute to the Fund. *See* A.R.S. § 32-1132(B). This notion is consistent with Arizona law, *see A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cty.*, 222 Ariz. 515, 535-36, ¶ 61 (App. 2009) (approving a jury instruction on the available measure of damages that "reflected the true economic loss" of the injured landowners and rejecting an alternate theory that would result in a windfall at the defendants' expense) (citation omitted); Restatement (First) of Contracts § 346 cmt. b (prohibiting an award of damages that would result in economic waste, or "cost[s] that would be imprudent and unreasonable"), and the statute's own limiting language, *see* A.R.S. § 32-1132(A) ("[D]amages . . . shall not exceed an amount necessary to complete or repair a residential structure or appurtenance within residential property lines.").

¶17 We cannot say the agency's interpretation is either incorrect or unreasonable. Accordingly, we adopt the ROC's interpretation of "actual damages" under A.R.S. § 32-1132(A) and remand for reconsideration of Ramsey's application for recovery from the Fund.

### III. Where the ROC's Objection Presents a Purely Legal Question, No Hearing Is Required.

¶18 The ROC also argues it is entitled to an evidentiary hearing pursuant to A.R.S. § 32-1136(B) upon the lodging of any objection to a homeowner's application for recovery from the Fund. Resolution of this question requires further consideration of the statute, which we again undertake *de novo*. *See supra* ¶ 6.

¶19 Section 32-1136(B) states that upon "recei[pt of] written objections by the registrar, the court shall not direct payment from the fund without affording the registrar a reasonable opportunity to present and support his objections." This section establishes the ROC's procedural rights relative to a claim against the Fund — "notice and an opportunity to be heard in a meaningful manner." *Magness*, 234 Ariz. at 431, ¶ 11. Although a reasonable opportunity to be heard is often equated with a hearing, the terms are not synonymous; what is reasonable will depend upon the circumstances of the case. *See Mathews v. Eldridge*, 424 U.S. 319, 333-34 (1976) ("Due process is flexible and calls for such procedural protections as the particular situation demands.") (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)); *see also Carlson v. Ariz. State Pers. Bd.*, 214 Ariz. 426, 430-31, ¶ 15 (App. 2007) (noting the flexible nature of due process does not require elaborate administrative hearings as long as there is notice and opportunity to be heard) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985)).

¶20 Section 32-1136(B) does not, by its plain terms, require a hearing, but rather an opportunity to be heard. Although the ROC relies upon *Magness* in arguing an absolute right to a hearing, *Magness* is distinguishable. There, this Court rejected the applicant's argument that no hearing was required because the ROC did not contest the eligibility requirements outlined in A.R.S. § 32-1136(D), holding instead that a hearing is required where the ROC challenges an applicant's lack of compliance with requirements set forth anywhere in the statutory scheme. *Magness*, 234 Ariz. at 432-33, ¶¶ 16-18. This principle is sound. However, when the ROC's objection presents a purely legal question, fully briefed before the trial court, an evidentiary hearing would serve no purpose. *See Bills v. Ariz. State Bd. of Educ.*, 169 Ariz. 366, 370 (App. 1991) (concluding no remand was

necessary where issues could be disposed of through summary judgment because they presented "only questions of law which we are able to resolve by statutory interpretation").

**¶21** Forcing a hearing under such circumstances is contrary to both principles of judicial efficiency and the legislature's direction that applications for recovery from the Fund be addressed without delay. *See* Ariz. R. Civ. P. 7.1(c)(2) ("To expedite its business, the court may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition."); *Cristall v. Cristall*, 225 Ariz. 591, 597, ¶ 29 (App. 2010) ("[T]he trial court has discretion to grant or deny a request for oral argument."); *see also supra* ¶ 8 (discussing requirement that an application for recovery from the Fund should be addressed in a summary manner). We therefore hold the ROC's opportunity to present and support its objections identified with A.R.S. § 32-1136(B) may be satisfied without a hearing if no factual matters are in dispute and the ROC's objection presents a legal matter appropriate for resolution by the trial court. Because the ROC's objection here was based upon the statutory definition of damages, no hearing was required.

## IV. Substantial Evidence Supports the Trial Court's Finding that the ROC Conceded the Amount Ramsey Spent to Complete the Residence.

**¶22** The ROC argues the trial court abused its discretion in finding it had conceded Ramsey spent $52,101.29 to complete the Residence. We will not set aside the trial court's factual findings unless they are clearly erroneous. Ariz. R. Civ. P. 52(a); *see also Clark v. Anjackco Inc.*, 235 Ariz. 452, 456, ¶ 14 (App. 2014) (citing *Phx. Newspapers Inc. v. Ariz. Dep't of Corr.*, 188 Ariz. 237, 244 (App. 1997)). "A finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence exists." *Kocher v. Dep't of Revenue of Ariz.*, 206 Ariz. 480, 482, ¶ 9 (App. 2003) (citing *Moore v. Title Ins. Co. of Minn.*, 148 Ariz. 408, 413 (App. 1985)).

**¶23** The record reflects that, within its notice of rejection, the ROC identifies the relevant figure, $52,101.29, as both "[t]he amount[] that [Ramsey] established that she spent repairing or completing her residence," and "verified expenditures to complete [the] project." In its response to Ramsey's application, the ROC admits Ramsey provided evidence to support this figure. Although the ROC's counsel indicated he "believe[d] that the ROC still ha[d] some concerns about proofs offered in support of some payments" and that its final decision would be "based on the

assumption those payments were proven," these concerns were expressed three weeks before formal notice of the ROC's objection to Ramsey's claim and are not reflected either in the notice of rejection or the response to Ramsey's application. Nor did the ROC ever object to the $52,101.29 figure, describe it as an approximation or demonstrative figure subject to further proof, or otherwise express any specific intent to challenge it in this case, even after Ramsey asserted the ROC made an "on-the-record acknowledgment of her damages." Instead, the ROC was clear that its sole objection to Ramsey's application was based upon its interpretation of A.R.S. § 32-1132(A) and not the specific figures to be entered into the calculation.

¶24        A party is bound by factual admissions or concessions made in its pleadings. *KCI Rest. Mgmt. L.L.C. v. Holm Wright Hyde & Hays P.L.C.*, 236 Ariz. 485, 488, ¶ 12 (App. 2014) (citing *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Maricopa Cty.*, 196 Ariz. 173, 176, ¶ 11 (App. 1999)). Substantial evidence exists to support the trial court's determination that the ROC conceded Ramsey spent $52,101.29 to complete the Residence,[4] and we find no abuse of discretion.

## CONCLUSION

¶25        We vacate the trial court's order and remand for reconsideration of Ramsey's application for recovery from the Fund. We leave to the trial court the issue of whether, under our interpretation of A.R.S. § 32-1132(A), Ramsey's application and the ROC's objection present questions of fact or law for which additional briefing, argument, or evidence is required.

AMY M. WOOD • Clerk of the Court
FILED: AA

---

[4]        We take no position on the significance of this finding in light of the principles articulated in Part II, *supra*, but note the trial court made no finding regarding Ramsey's assertion that she paid "well over $100,000" to remedy the deficiencies in the Edens' performance. Such a finding was immaterial under the court's erroneous interpretation of A.R.S. § 32-1132(A). *See supra* ¶ 5. These and any remaining factual matters are best handled on remand.