IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MARK R. GORDON, *Plaintiff/Appellant*,

*v.*

ARIZONA REGISTRAR OF CONTRACTORS, et al., *Defendants/Appellees*.

No. 1 CA-CV 18-0306

FILED: 7-23-2019

Appeal from the Superior Court in Maricopa County
No. LC 2015-000451-001
The Honorable Patricia A. Starr, Judge

**AFFIRMED**

APPEARANCES

Mark R. Gordon, Phoenix
*Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Thomas C. Raine
*Counsel for Defendants/Appellees*

---

## OPINION

Judge Jennifer B. Campbell delivered the opinion of the Court, in which Presiding Judge Paul J. McMurdie and Judge Samuel A. Thumma joined.

---

**C A M P B E L L**, Judge:

¶1        The Residential Contractors' Recovery Fund (the "Fund") was established to provide a remedy to homeowners injured by unethical or negligent contractors. Mark Gordon seeks an award from the Fund based on the cost of home repairs arranged under his home warranty policy. Because breach of a home warranty contract is not a claim arising from a violation of the regulations governing contractors, he is not entitled to collect from the Fund. We affirm.

## BACKGROUND

¶2        In 2008, Gordon purchased a home warranty policy from InHouse Home Warranty, Inc. InHouse held two licenses: a license to sell home warranty policies, issued by the Department of Insurance ("DOI"), and a license for air system repair and replacement, issued by the Registrar of Contractors ("ROC"). The policy promised coverage through 2012. Although InHouse's DOI license expired in 2009, Gordon continued to pay premiums through mid-2011.

¶3        The policy covered repairs on a wide range of household systems. Gordon paid an annual premium plus a $45 fee for each service call. After receiving service calls, InHouse often arranged with independent contractors to complete the actual work. An exception to this practice was for air system repair, which InHouse performed under its ROC license. In October 2011, InHouse stopped answering Gordon's calls for service. Gordon filed a complaint with the ROC, accusing InHouse of performing work outside the scope of its ROC-issued license, aiding and abetting an unlicensed contractor, operating as an insurance company without a license, and failing to respond to new requests for service.

¶4        InHouse did not answer Gordon's complaint. The ROC deemed all of Gordon's allegations admitted and issued a default decision and order revoking InHouse's air system license—the only license InHouse held subject to the ROC's jurisdiction. Next, Gordon sought an award from

the Fund. *See* Ariz. Rev. Stat. ("A.R.S.") § 32-1132, *amended by* A.R.S. § 32-1132 (2019).[1] The ROC denied Gordon's claim, concluding that he was not eligible because the InHouse home warranty policy was not a construction contract. The ROC also concluded that damages claimed by Gordon did not result from incomplete or defective workmanship—the only damages that can be paid out of the Fund.

¶5        Gordon requested a hearing with an administrative law judge ("ALJ") to determine whether the policy was a construction contract under A.R.S. §§ 32-1101 and -1132. At that hearing, Gordon argued that payments he made for each service call under the policy provided the consideration necessary to create distinct construction contracts with InHouse.

¶6        The ALJ concluded that "InHouse's main contract with Mr. Gordon was a home warranty policy to cover the risk that home repairs might be necessary in the future . . . [and] not a construction contract to perform specific repairs for a definite and fully liquidated consideration." The ALJ noted that "[t]he only possible exception" was work InHouse performed on the home's air system. The ROC accepted the ALJ's conclusion, adopting it as the final administrative decision.

¶7        Gordon appealed to the superior court and the superior court affirmed the ALJ's decision. The superior court explained that the policy was a home warranty agreement regulated by the DOI and not the ROC. The court also concluded that Gordon's complaints relating to the air system "stemmed from his belief that it should have been covered by the home warranty, and not from any workmanship issues." The court also rejected Gordon's assertion that his due process rights had been violated. Gordon appeals this decision.

## DISCUSSION

¶8        We will affirm an agency's decision unless it "is contrary to law, is not supported by substantial evidence, is arbitrary and capricious or is an abuse of discretion." A.R.S. § 12-910(E); *Ritland v. Ariz. State Bd. of Med. Exam'rs*, 213 Ariz. 187, 189, ¶ 7 (App. 2006). We review the interpretation of statutes de novo, turning first to the language of the statute, *Pinnamaneni v.*

---

[1] During the pendency of this appeal, the Arizona Legislature amended statutes relevant to this case in Title 32. *See* 2019 Ariz. Sess. Laws 145 (1st Reg. Sess.). We apply the law in effect when Gordon's claim began, unless otherwise noted. While we do not interpret the amended statutes, we provide parallel citations to the 2019 Arizona Revised Statutes for reference.

*Ariz. Registrar of Contractors*, 237 Ariz. 147, 149, ¶ 10 (App. 2015), "effectuat[ing] the text if it is clear and unambiguous," *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19, ¶ 9 (2018). We read words in context and look to the statute as a whole to interpret a specific provision. *Stambaugh v. Killian*, 242 Ariz. 508, 509, ¶ 7 (2017). If the statute is ambiguous, we may consider "the statute's history, context, consequences, and purpose." *Wilks v. Manobianco*, 237 Ariz. 443, 446, ¶ 8 (2015).

**¶9**        We affirm the superior court for three independent reasons: (1) Gordon did not have a construction contract with InHouse to perform all the warranty repairs; (2) Gordon is not a "person injured" under the relevant statute; and (3) Gordon did not suffer any actual damages.

## I.    Gordon's home warranty policy was not a construction contract subject to regulation by the ROC.

**¶10**        Gordon cannot collect from the Fund because the damages he claimed arose from an alleged breach of his home warranty policy, not from defective or incomplete work by a contractor. The statutory definition of a "home warranty policy," subject to regulation by the DOI, plainly describes the insurance policy here: "a contract or agreement sold for a separately stated consideration for any duration that provides for [or indemnifies] . . . [t]he service, maintenance or repair, including replacement, of all or any part of structural components, appliances, electrical, plumbing, heating, cooling or air conditioning systems of residential property." A.R.S. §§ 20-1095(3), (7)(b)(i); -1095.10(A). Violations of a home warranty policy are squarely within the purview of the DOI—not the ROC. The DOI, therefore, has the exclusive authority to discipline home warranty insurers and to provide consumer protections. *See* A.R.S.    § 20-1095.09.

**¶11**        We are not persuaded by Gordon's argument that payment of the service fee created separate construction contracts within the meaning of Title 32. A construction contract is defined as "a written or oral agreement relating to the construction, alteration, repair, maintenance, moving or demolition of any building, structure or improvement or relating to the contractor's excavation of or other development or improvement to land." A.R.S. § 32-1154(B)(1), *amended by* A.R.S. § 32-1154(B)(2)(a) (2019). In short, the service fee Gordon paid when he called for a repair did not create a contract with InHouse for performance of that service; it charged under his insurance policy, much like a co-pay for a doctor's office visit. The main contract Gordon had with InHouse was the home warranty policy—not a contract for construction. Gordon did not raise claims against any of the contractors who actually performed work on his property.

¶12        Gordon argues that the ROC admitted there were construction contracts at issue in his dealings with InHouse. In support, he alleges that the ROC withheld internal file "Notes" comparing his home warranty to a construction contract. At the administrative hearing, the ALJ explained that any such documents were irrelevant. We agree with the ALJ. The issue presented to the ALJ was a question of statutory interpretation, and thus the ALJ was not bound by the agency's legal opinion, even if the "Notes" existed.

II.        **Gordon has not shown that he is entitled to recovery from the Fund as a "person injured" by a residential contractor.**

¶13        The second independent reason barring Gordon from collecting from the Fund is that he does not qualify as a "person injured." A.R.S. § 32-1131(3)(a), *amended by* A.R.S. §§ 32-1131, -1132(B) (2019). The Fund is available only to a "person injured," A.R.S. § 32-1132(A), *amended by* A.R.S. § 32-1132(B) (2019), defined as one who is "damaged by the failure of a residential contractor or a dual licensed contractor to adequately build or improve a residential structure or appurtenance on that real property." A.R.S. § 32-1131(3)(a), *amended by* A.R.S. § 32-1131 (2019). Gordon did not allege damage from workmanship deficiencies for any incomplete work.

¶14        InHouse did complete the installation of a new air system under its ROC license. While Gordon alleges that work related to the air system should have been covered under his warranty and challenges the amount of labor billed, he does not complain that the system InHouse installed fails to work as intended—only that the labor was unnecessary and the cost was too high. This allegation does not fall within the statutory definition of a "person injured," precluding recovery from the Fund.[2]

---

[2] Gordon argues that the ROC failed to meet its statutory obligation to "investigate the acts of any contractor" upon written complaint of a homeowner, A.R.S. § 32-1154(B), *amended by* A.R.S. § 32-1154(B)(2) (2019), by failing to promptly perform an on-site inspection of his home. The statute only requires an investigation when a person "suffers a material loss or injury as a result of a contractor's failure to perform work in a professional and workmanlike manner." *Id.*

### III. Gordon failed to allege any "actual damages" that would qualify him for compensation from the Fund.

¶15      The third independent reason supporting the denial of Gordon's claim is his failure to allege actual damages. The Fund was created to compensate homeowners for actual damages suffered as a direct result of the contractor's failure to adequately build or improve a residential structure or appurtenance. A.R.S. § 32-1132(A), *amended by* A.R.S. §§ 32-1132(B)(1), -1132.01(A) (2019). The proper measure of damages is the cost of completing the contract and repairing a contractor's defective performance, less the part of the contract price still unpaid. *Ramsey v. Ariz. Registrar of Contractors*, 241 Ariz. 102, 106-07, ¶ 11 (App. 2016). Because Gordon did not claim that any contractor's work was performed defectively or that any of the work performed by a contractor was incomplete, he did not suffer damage compensable by the Fund.

¶16      Gordon sought reimbursement of money he paid InHouse to replace his broken air system. Gordon alleged that InHouse initially responded to a service call for which Gordon paid $45. InHouse notified him that the air system would need to be replaced and that associated labor costs were not covered under his policy. After InHouse completed the work, Gordon only complained about the price and time the project took to complete, but did not allege that the air system failed to function after service was complete. Gordon failed to allege any "actual damage" that would be compensable through the Fund.

### IV. Gordon's right to due process was not violated.

¶17      Gordon argues that his due process rights were violated because he had no notice that his Fund claim would be barred absent an allegation of defective workmanship. The requirements for filing a ROC complaint are outlined in A.R.S. § 32-1155, *amended by* A.R.S. § 32-1155 (2019). Moreover, a description of "actual damages" appears on Gordon's Fund application. Gordon bore the responsibility to investigate and properly identify the deficiency and the relief requested.

¶18      Next, Gordon cites *Pinnamaneni*, 237 Ariz. at 148, ¶ 1, arguing that his ROC complaint need not allege a workmanship deficiency to establish eligibility under the Fund. Gordon misconstrues the holding of *Pinnamaneni,* which did not address the issues raised here and lends no support to his argument. *Id.*

¶19      "Procedural due process means that a party had the opportunity to be heard 'at a meaningful time and in a meaningful

manner.'" *Comeau v. Ariz. Bd. of Dental Exam'rs*, 196 Ariz. 102, 106-07, ¶ 20 (App. 1999) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Gordon had ample opportunity to present his case through his ROC complaint, Fund application, and hearing with an ALJ where he presented evidence, testified, and cross-examined witnesses. Gordon was afforded procedural due process and he has shown no error in the way the proceedings were conducted.

## CONCLUSION

**¶20**        For the foregoing reasons, we affirm. We deny Gordon's request for costs.



AMY M. WOOD • Clerk of the Court
FILED:           RB