NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SUSAN J., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, S.J., *Appellees.*

No. 1 CA-JV 16-0260
FILED 6-8-2017

Appeal from the Superior Court in Coconino County
No. S0300JD201500011
The Honorable Elaine Fridlund-Horne, Judge

**AFFIRMED**

COUNSEL

Coconino County Public Defender's Office, Flagstaff
By Sandra L. J. Diehl
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffman
*Counsel for Appellee DCS*

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Kent E. Cattani joined.

**K E S S L E R,** Judge:

¶1        Susan J. ("Mother") appeals the juvenile court's order terminating her parental rights pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(b) (2016).[1] For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        Mother is the biological mother of SJ, born March 2, 2015. Within days of SJ's birth, the Department of Child Safety ("DCS") removed SJ from Mother's care because Mother confessed to killing SJ's biological father ("Father").[2] DCS then filed a dependency petition alleging Mother was unable to parent SJ due to incarceration.

¶3        At a hearing later that month, the juvenile court noted Mother was unable to participate in many services due to her incarceration at the county jail. It accordingly ordered DCS to refer Mother to a clinical family assessment and to conduct home studies of relatives in Washington and Arizona and ordered Mother to participate in all services offered at the jail facility. Although the court did not expressly order DCS to refer Mother to a psychological evaluation after the hearing, DCS prepared a case plan for Mother effective March 19, 2015 that recommended participation in mental health services and parenting services.

¶4        Approximately two months later, Mother admitted to the allegation that she was unable to care for SJ due to her incarceration, and

---

[1]       We cite the current version of statutes unless alterations material to this decision have occurred since the events in question.

[2]       Mother has since been convicted of first-degree murder and sentenced to life in prison.

the court found SJ dependent as to Mother.[3] When the court inquired as to whether all services available to Mother had been identified, Mother replied that she would not participate in certain services, including a psychological evaluation, because doing so would violate her Fifth Amendment right to remain silent about her pending criminal charges. The court then concluded that all services that were available to Mother had been identified, Mother was participating in any services she could while in custody, and no additional services were necessary at the time.

¶5        Over the next three months, DCS repeatedly recommended that Mother participate in a psychological evaluation, explaining that the evaluation would enable it to recommend further services to Mother. Mother continued to protest that doing so would violate her Fifth Amendment rights. Mother did not agree to participate in a psychological evaluation until mid-August.[4]

¶6        At the initial permanency hearing in September, DCS requested to change the case plan to severance and adoption, arguing Mother had willfully refused to participate in the few services required by her case plan. Mother agreed to participate in counseling, a psychological evaluation, and parenting courses while in jail. However, the court found that by that time, SJ had been in out-of-home care for six months; the only service in which Mother had participated was visitation; and Mother had "refused to participate in other services that would have moved the case forward to at least initiate any more services that would be recommended by any evaluation."

¶7        Mother participated in a psychological exam in early October, but she refused to talk about the circumstances surrounding Father's murder. DCS moved for severance in November, alleging SJ had been in an out-of-home placement for six months or longer pursuant to a court order, DCS had made a diligent effort to provide reunification services, and

---

[3]        DCS initially also alleged neglect for failing to protect SJ from domestic violence, but it dropped the allegation in exchange for Mother's admission that she was unable to parent due to incarceration. The juvenile court later declined to find that Mother's admission to being unable to parent due to incarceration constituted "neglect" as defined by A.R.S. § 8-201(24) (2015).

[4]        The evaluation could not be scheduled until October. *See infra*, ¶ 7.

Mother had substantially neglected or willfully refused to remedy the circumstances that caused SJ to be in an out-of-home placement. *See* A.R.S. § 8-533(B)(8)(b). Mother was released from custody on bond in December, and the court granted Mother's request for two home studies on potential Arizona placements for SJ and his brother TJ (collectively, the "Children").[5] DCS continued to facilitate video visitation and Mother participated in counseling and a psychiatric evaluation.

¶8 The severance trial took place on multiple dates between February and April 2016. The DCS caseworker and her supervisor testified that as of the beginning of the trial Mother had participated in all requested services other than domestic violence counseling. However, they said Mother's refusal to discuss the circumstances leading to SJ's out-of-home placement in any service prevented DCS from identifying the underlying "trigger" that caused Mother to kill Father or assessing the safety risk of returning SJ to Mother. Both DCS employees testified severance was in SJ's best interests because: SJ had no relationship with Mother; SJ had bonded with his placement; SJ was adoptable; Mother had not remedied the safety concerns leading to SJ's removal; and, given SJ's age at the time of removal, taking him from the only home he knew would be traumatic.

¶9 The juvenile court found SJ had been in an out-of-home placement for six months or longer pursuant to court order, DCS had made a diligent effort to provide appropriate reunification services, and Mother had substantially neglected or willfully refused to remedy the circumstances that caused SJ to be in an out-of-home placement. *See* A.R.S. § 8-533(B)(8)(b). It noted Mother's five-month refusal to participate in a psychological evaluation and the court's September and November findings of substantial neglect or willful refusal to participate in services. It concluded DCS had proven the grounds for severance by clear and convincing evidence.

¶10 The court also found that DCS had proven that termination of the parent-child relationship was in SJ's best interests by a preponderance of the evidence. It found that termination would benefit SJ by furthering

---

[5] The Children had been placed with a maternal aunt in Washington state earlier in the proceeding. Mother also requested a modification of custody to have the Children moved to Arizona, but TJ's therapist opined that modifying visitation could be detrimental to TJ due to his confusion over Mother's location. *See Maricopa Cty. Juv. Action No. JD-5312*, 178 Ariz. 372, 376 (App. 1994) (finding DCS is not required to provide parent visitation that could adversely affect the child).

the plan of adoption, which would provide SJ with stability and permanency. It also observed that SJ was residing with an adoptive placement that was meeting all his needs and was the least restrictive placement available consistent with his needs. Finally, it stated that SJ was adoptable and another adoptive placement could be located should SJ's placement become unable to adopt.

**¶11**     Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) (2016) and 12-2101(A)(1) (2016).[6]

## DISCUSSION

**¶12**     Mother argues the juvenile court erred by finding: (1) Mother substantially neglected or willfully refused to remedy the circumstances that caused the Children to be in an out-of-home placement; (2) DCS had made diligent efforts to provide appropriate reunification services; and (3) termination was in the Children's best interests.

I.     Standard of Review

**¶13**     To terminate parental rights, the juvenile court must find at least one of the statutory grounds set out in A.R.S. § 8-533(B) by clear and convincing evidence. *See* A.R.S. § 8-533(B); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000) (citation omitted).  It must also find DCS has shown by a preponderance of the evidence that termination is in the best interests of the child. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). On review, "we will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002) (citations omitted). "A finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence exists." *Ramsey v. Ariz. Registrar of Contractors*, 241 Ariz. 102, 109, ¶ 22 (App. 2016) (quotation and citations omitted).

---

[6]     On April 21, 2017, this Court entered an order vacating the conference of this matter and asking the parties to brief whether the appeal was moot.  The Court reviewed the supplemental briefs on that issue, decided the case was not moot, and then conferenced the appeal.

II.     Grounds for Severance

**¶14**        When a child is under three years old, the court may sever the parental relationship if it finds by clear and convincing evidence that (1) the child has been in an out-of-home placement for six months or longer pursuant to court order, and (2) the parent has substantially neglected or willfully refused to remedy the circumstances that cause the child to be in an out-of-home placement. A.R.S. § 8-533(B)(8)(b).[7] The factor of substantial neglect or willful refusal to remedy the circumstances causing the out-of-home placement focuses on a parent's effort to cure the circumstances rather than her success in doing so.  *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 60, ¶ 17 (App. 2015) (citation and quotation omitted).  It refers to the "circumstances" existing at the time of the severance rather than the initial dependency petition.  *Id.* (citation and quotation omitted).

**¶15**        Before severing the parental relationship pursuant to A.R.S. § 8-533(B)(8)(b), DCS must make a diligent effort to provide appropriate reunification services unless those efforts would be futile.  *Id.*; *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999) (citations omitted).  This means DCS must "undertake measures with a reasonable prospect of success" in reuniting the family. *Mary Ellen C.*, 193 Ariz. at 192, ¶ 34.  However, DCS is "not required . . . to provide every conceivable service or to ensure that a parent participates in each service it offers." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 15 (App. 2011) (citation and quotation omitted).

        A.     Substantial neglect or willful refusal to remedy the circumstances causing the out-of-home placement

**¶16**        Mother argues (1) the court erred by terminating her parental rights based on her indictment; (2) the court erred by finding Mother's failure to discuss the specifics of the criminal offense with which she was charged was a failure to comply with services; (3) insufficient evidence supported the juvenile court's finding that Mother had substantially neglected or willfully refused to remedy the circumstances that caused SJ to be in an out-of-home placement; and (4) the court considered the wrong time period when making its finding.

---

[7]        Mother does not contest that SJ is under three and had been in an out-of-home placement for six months or longer pursuant to court order. She has therefore conceded the accuracy of these findings. *See Britz v. Kinsvater*, 87 Ariz. 385, 388 (1960).

**¶17** As an initial matter, the record does not support Mother's assertion that the juvenile court based severance on her indictment or "the [S]tate's failure to provide proof of Mother's guilt." Although the court commented that certain "witnesses seem[ed] to believe that Mother has done nothing wrong and is somehow justified in her actions . . . [but the court did] not have evidence of such, [or] an acquittal to rely upon for that finding," it did not base its ruling on the lack of an acquittal. Mother admitted at trial that she shot and killed Father, consequently the court did not need to rely on Mother's indictment to find there was a safety concern returning SJ to Mother.

**¶18** Mother's argument that the court erred by considering her failure to discuss the specifics of the criminal offense with which she was charged as a failure to comply with services, or that it ordered Mother to violate her Fifth Amendment rights, also fails. The State may require parents to attend therapy and counseling without violating their Fifth Amendment rights, and the potential for self-incrimination in a criminal case is not a justification for refusing to participate in reunification services. *See Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 80, ¶ 15 (App. 2001) (citations omitted) (recognizing the "distinction between a treatment order that requires parents to admit criminal misconduct and one that merely orders participation in family reunification services"). Mother does not point to any order in the record that ordered her to admit criminal misconduct, therefore Mother's Fifth Amendment rights were not violated. *See id.* at 80, ¶ 16 (finding appellants' Fifth Amendment rights were not violated where appellants could "not point to any order that required them to admit any criminal acts as part of the . . . case plan").

**¶19** Although we recognize Mother's participation in several services, we conclude reasonable evidence supports the juvenile court's finding that Mother substantially neglected or willfully refused to remedy the circumstances causing SJ to be in an out-of-home placement. By the time of the severance trial, SJ had been in an out-of-home placement for nearly a year, the first five months of which Mother had willfully refused to engage in any services other than visitation. Although the two DCS employees testified Mother was compliant with all services as of February 2, 2016, they also stated that although Mother had participated in requested services, she had not discussed anything related to Father's murder and her partial participation prevented DCS from being able to identify the underlying "trigger" that caused Mother to kill Father or to assess the safety risk in returning the Children to Mother. They also stated they would request Mother's participation in domestic violence counseling because Mother still had not participated in such counseling by that point, despite the DCS case

manager's testimony that domestic violence counseling was a priority for DCS.

**¶20**        Mother argues the court considered the wrong time period for compliance with the case plan because it cited its July and November 2015 minute entries in its findings, but this argument is not supported by the record. The court found that "Mother did not actively participate in any service that would address the underlying basis for the removal of the children," despite it "repeatedly encourag[ing] Mother to participate in domestic counseling services and a psychological evaluation." It merely cited its September and November minute entries in support of this fact.

**¶21**        We recognize that Mother agreed to participate in a psychological evaluation in August and a psychiatric evaluation in December. However, Mother's agreement to participate in a limited fashion nearly six months after SJ's removal does not invalidate the court's finding that Mother had substantially neglected or willfully refused to engage in any services to remedy the circumstances causing SJ's out-of-home placement.  Deferring to the juvenile court's determination of witnesses' credibility and the weight to give conflicting evidence, we find no abuse of discretion. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347 (App. 1998) (citation omitted).

### B.        Diligent reunification efforts

**¶22**        Mother argues the court erred when it found DCS had made diligent reunification efforts because she requested services that were never provided, including home studies and family counseling. She also asserts telephonic visits did not constitute sufficient reunification efforts once she was released from prison.

**¶23**        First, Mother did not request these services until her release in December 2015, after the juvenile court had changed SJ's parenting plan to severance and adoption. Additionally, the record does not support Mother's claim that she requested services that were never provided such as home studies and family counseling. In a July 2015 hearing, the juvenile court stated that upon Mother's release from custody, she should "notify [her] attorney . . . [and] caseworker, and home studies will be done in an expedited fashion."  Mother was released on December 1, 2015 and the court ordered DCS to conduct the home studies by the end of the month. However, one of the requested placements was not appropriate for a home study because Mother was residing there, and the other placement was

already going through the process to become a licensed foster placement thus a home study would have been redundant.

¶24        With regards to family counseling and in-person visitation, no evidence indicates family counseling was requested for SJ, only for TJ. Additionally, upon Mother's motion to modify visitation, TJ's therapist opined that modifying visitation could be detrimental to TJ due to his confusion over Mother's location. DCS is not required to provide parent visitation that could adversely affect the child. *No. JD-5312*, 178 Ariz. at 376. DCS is "not required to provide every conceivable service or ensure that a parent participates in each service it offers." *Christina G.*, 227 Ariz. at 235, ¶ 15. We find no abuse of discretion.

III.    Best interests

¶25        To establish that severance of a parent's rights would be in a child's best interests, the court must find either that the child will benefit from termination of the relationship or that the child would be harmed by continuation of the parental relationship. *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18 (App. 1998) (citation omitted). In making this determination, the juvenile court may consider evidence that the child is adoptable or that an existing placement is meeting the needs of the child. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004) (citations omitted).

¶26        Mother asserts the juvenile court's finding that termination was in SJ's best interests was clearly erroneous. She asserts the court erred when it relied upon the length of time SJ had been in care; the bond he had built with his placement; Mother's outstanding criminal charges against her; and her failure to address the reason SJ was not in her care as factors in its ruling. She also argues DCS's failure to provide in-person visitation deprived her of the opportunity to form a bond with SJ.

¶27        Sufficient evidence supports the juvenile court's findings. DCS took custody of SJ two days after his birth. Within weeks, he was placed with TJ in Washington with their maternal aunt, where they remained for the rest of the severance proceedings. The DCS case worker testified that severance was in SJ's best interests because Mother did not participate in services before the permanency deadline, SJ had bonded to his placement, and SJ was adoptable. She stated the maternal aunt was willing to adopt him and able to meet his needs, SJ was bonded with the aunt, and SJ deserved permanency. The DCS supervisor supported this testimony, stating SJ's current placement was meeting his needs, had

established a relationship with him, and SJ had bonded to them. She also opined severance was in SJ's best interest because SJ had no relationship with Mother; was "completely bonded and attached" to his current placement; Mother had not remedied the safety concerns leading to SJ's removal; and, given SJ's age at the time of removal, taking him from the only home he knew would be traumatic.

¶28  Although the Court Appointed Special Advocate stated she did not support severance at the time of trial, she testified that permanency was in SJ's best interests. Mother herself testified that the Children benefitted from predictability, stability, and knowing they are safe, and she could not provide those things while in prison. This evidence is sufficient to support the court's best interests finding, and we find no abuse of discretion.

## CONCLUSION

¶29  For the foregoing reasons, we affirm the juvenile court's order terminating Mother's parental rights to SJ.

